**Rodney GREGORY, individually and on behalf of all others similarly situated, Plaintiff–Appellant,**

v.

**SCIE, LLC, dba EPSG Management Services, LP, Defendant–Appellee.**

No. 01–57241.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 2, 2002.

Filed Jan. 27, 2003.

Alan Harris, Harris & Ruble, Los Angeles, CA, and Maxwell M. Blecher, Los Angeles, CA, for the plaintiff-appellant.

Rex S. Heinke, Akin, Gump, Strauss, Hauer & Feld, LLP, Los Angeles, CA, for the defendant-appellee.

Before: D.W. NELSON and T.G. NELSON, Circuit Judges, and SCHWARZER,[*] Senior District Judge.

SCHWARZER, Senior District Judge.

Rodney Gregory brought this action against SCIE, LLC, dba EPSG Management Services, LP ("SCIE"), in state court under Section 1194 of the California Labor Code, which entitles "any employee receiving less than ... the legal overtime compensation applicable to the employee ... to recover ... the unpaid balance of the full amount." He alleged he was not paid for overtime work performed for SCIE at premium wage rates in violation of California Labor Code Section 510 and Wage Orders 11 and 12. SCIE removed the action to the district court, alleging that the claims arise under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), and are, therefore, within the jurisdiction of the federal district court.[1]

The district court dismissed the action with prejudice on the ground that four of Gregory's causes of action are preempted by § 301; it remanded a fifth cause of action for continuing wages under California Labor Code Section 203 to the Superior Court. Gregory appeals. We have jurisdiction over the appeal under 28 U.S.C. § 1291 and vacate and remand with directions to remand to the Superior Court.

## FACTUAL BACKGROUND

Gregory is employed in the entertainment industry. He is a member of Local 44 of the International Alliance of Theatrical Stage Employees and Motion Picture Technicians Artists and Allied Craft of the United States and Canada ("IATSE"). The terms and conditions of his employment, including overtime, are governed by a collective bargaining agreement ("CBA") between IATSE and a multi-employer bargaining unit, the Alliance of Motion Picture and Television Producers ("Alliance"). SCIE is a company represented by the Alliance and is a signatory to and covered by the CBA.

While employed by SCIE, Gregory worked on multiple television and motion picture productions. During a period of two months, he worked six consecutive days on two productions in one week: one day on one production and five on the other. While working on two other productions, he worked twenty and one-half hours on one day: eight hours on one show and twelve and one-half hours on the other. He alleges that SCIE violated the California Labor Code by failing to pay him at premium wage rates for the hours

---

[*] The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

1. Gregory also alleged other state law claims which are not relevant to our decision because they do not implicate separate grounds for federal preemption. He raised claims for penalties under California Labor Code Section 203 for willful nonpayment of overtime due and for restitution, disgorgement and injunctive relief under California Business & Professions Code Section 17200.

worked in excess of eight hours in one workday and forty hours in one workweek, as required by Section 510.[2]

## DISCUSSION

■ Because this is a state law action between nondiverse parties, this court's subject matter jurisdiction depends on whether Gregory's claim is preempted under § 301. A federal law defense to a state-law claim does not confer jurisdiction on a federal court. *See Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.,* 463 U.S. 1, 14, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). Thus, a plaintiff may generally avoid federal jurisdiction by pleading solely state-law claims. An exception to that general proposition exists, however, if federal law completely preempts the plaintiff's state-law claim. In that case, federal law completely displaces plaintiff's state-law claim, no matter how carefully pleaded. "In such instances, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Balcorta v. Twentieth Century–Fox Film Corp.,* 208 F.3d 1102, 1107 (9th Cir.2000).

■ The complete preemption exception is applied primarily under § 301 of the LMRA. *Id.* That Section vests jurisdiction in federal courts over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). The Supreme Court has expanded § 301 preemption to cases whose resolution "is substantially dependent upon analysis of the terms of [a collective bargaining agreement]." *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). However, § 301 does not preempt a claim alleging state law substantive rights that apply without regard to a CBA and can be resolved without interpreting a CBA. *Lingle v. Norge Div. of Magic Chef, Inc.* 486 U.S. 399, 413, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). In *Livadas v. Bradshaw,* 512 U.S. 107, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994), the Court provided further clarification, stating that " § 301 cannot be read broadly to preempt non-negotiable rights conferred on individual employees as a matter of state law. . . . [W]hen the meaning of contract terms is not the subject of a dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Id.* at 122–24, 114 S.Ct. 2068 (internal citations and footnotes omitted). Finally, in *Cramer v. Consolidated Freightways, Inc.,* 255 F.3d 683 (9th Cir. 2001) (en banc), we summarized the preemption analysis:

> The plaintiff's claim is the touchstone of [the preemption] analysis; the need to interpret the CBA must inhere in the nature of the plaintiff's claim. If the claim is plainly based on state law, § 301

**2.** California Labor Code Section 510 states, in relevant part:

> Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at no less than twice the regular rate of pay for an employee. . . . The requirements of this section do not apply to the payment of overtime compensation to an employee working pursuant to any of the following:
>
> (2) An alternative workweek schedule adopted pursuant to a collective bargaining agreement pursuant to Section 514.
>
> Parallel regulations are found in 8 California Code of Regulations Sections 11110 ¶ 3(A) and 11120 ¶ 3(A) (2001).

preemption is not mandated simply because the defendant refers to the CBA in mounting a defense.

*Id.* at 691.

■ Here, Gregory's claim is based entirely on state law. There is no dispute over the terms of the CBA or its interpretation. While overtime is calculated in accordance with the terms of the CBA, this case involves no issue concerning the *method* of calculation. The issue here is not *how* overtime rates are calculated but whether the *result* of the calculation complies with California law, i.e., whether Gregory is paid at premium wage rates for "*[a]ny work* in excess of eight hours in one workday and *any work* in excess of 40 hours in any one work week" (emphasis added), as required by California law. Cal. Lab.Code § 510. The issue arises because the work Gregory performed for SCIE on different productions exceeded in the aggregate eight hours in one work day and forty hours in one work week. He was not paid premium wage rates because SCIE does not lump together different productions to calculate overtime hours. The dispute between the parties may require interpretation of the words "any work" in the statute, but its resolution does not require reference to, much less interpretation of, the CBA.

In support of its position, SCIE invokes Section 514, which provides: "[S]ection 510 ... do[es] not apply to an employee covered by a valid collective bargaining agreement if the agreement ... provides premium wage rates *for all overtime hours worked* ...." CAL. LAB. CODE § 514 (emphasis added.) SCIE argues that by reason of Section 514, Section 510 does not apply because the CBA under which Gregory works and is paid provides premium wage rates for overtime. Even assuming the CBA provides premium wage rates for overtime, the question here is the same as that raised by Section 510: whether when overtime is paid under the CBA it is paid for *all overtime hours worked,* as required by California law. This is a question of interpretation of state law, not of the CBA, that we leave to the state court. SCIE does not contend that Gregory's claim based on aggregating all hours worked in a workday or a workweek arises under the CBA. Nor has SCIE shown that the CBA, which is silent about whether hours worked on different productions are or are not to be aggregated when calculating overtime hours worked, has any bearing on this issue.[3] Here, all that was needed to determine Gregory's claim were the earning reports for each day worked.[4] *See Balcorta v. Twentieth Century–Fox Film Corp.,* 208 F.3d 1102, 1110 (9th Cir.2000) (stating that determination of timeliness of wage payments under California wage

---

**3.** Our decision in *Firestone v. Southern California Gas Co.,* 219 F.3d 1063 (9th Cir.2000) is not apposite. There, the issue was whether the compensation received by the employees under a complex formula of the CBA constituted the premium wage rates required by California law. *Id.* at 1066–67. However, that issue could not be resolved without interpretation of the CBA. *Id.* Here, the parties' dispute is not over how premium wage rates are calculated under the CBA, but whether Gregory is paid premium pay for *all the time* for which he is entitled to premium pay under California law. This dispute does not require interpretation of the CBA.

**4.** It may be that, given the nature of work in the entertainment industry, compliance with Sections 510 and 514 will confront SCIE with complexities in the administration of the CBA's overtime provisions, as SCIE argues. The bottom line, however, is that SCIE is bound by state law, which gives employees a right to overtime compensation "for all overtime hours worked." Overtime hours are defined in Section 510. Whether SCIE's practice of not lumping different productions to determine hours worked complies with California law is a question for the state court.

payment statute does not require reference to the CBA.).[5]

Federal jurisdiction depends on preemption of Gregory's claim. Because his claim is "plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense." *Cramer*, 255 F.3d at 691. We hold that federal jurisdiction has not been established. Accordingly, we vacate the judgment and remand with directions to remand to the Superior Court of Los Angeles County. Because we lack jurisdiction, we do not reach Gregory's other claims.

VACATED and REMANDED.

T.G. NELSON, Circuit Judge, dissenting:

I respectfully dissent. Determining whether California law applies to Gregory requires interpreting the collective bargaining agreement, which triggers preemption. Thus, I would affirm the district court.

California Labor Code Section 510, the section under which Gregory brings the claims in question, expressly does *not* apply to employees "working pursuant to a collective bargaining agreement pursuant to Section 514." [1] Section 514 sets forth the precise characteristics of collective bargaining agreements that place employees outside the reach of Section 510. The

collective bargaining agreement must: (1) "expressly provide[ ] for the wages, hours of work, and working conditions of employees"; and it must (2) "provide[ ] premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." [2]

On its face, the collective bargaining agreement between SCIE and Gregory's union appears to meet Section 514's requirements. It expressly provides for "wages, hours of work, and working conditions." In addition, it provides wage rates significantly greater than 30% over California's minimum wage; [3] and correspondingly high premium wage rates for overtime work. Thus, on its face, the collective bargaining agreement governing Gregory's employment seems to except him from the requirements of Section 510.

The interesting twist in this case is that SCIE's rather novel interpretation of the agreement does *not* comport with the requirements of Section 514. As applied by the defendant, the agreement requires overtime compensation only when an employee works on *one production* for more than eight hours in a day or forty hours in a week. SCIE will not pay overtime if an employee works the same number of hours on different productions. As applied by SCIE, then, the collective bargaining agreement does not meet Section 514's

---

**5.** SCIE appears to argue in passing that the employees covered by the CBA gave up their statutory right to premium wage rates for all overtime hours worked in exchange for the CBA's benefits. The argument flies in the face of Section 1194(a), which provides a cause of action for legal overtime pay "notwithstanding any agreement to work for a lesser wage." Cal. Lab.Code § 1194(a). Moreover "the CBA must include 'clear and unmistakable' language waiving the covered employee's state right 'for a court even to consider whether it could be given effect.' " *Cramer*, 255 F.3d at 692 (quoting *Livadas*, 512

U.S. at 125, 114 S.Ct. 2068). SCIE cites to no such language.

**1.** Cal. Lab.Code § 510.

**2.** Cal. Lab.Code § 514.

**3.** Defendants assert that California's minimum wage during the relevant period was $6.75 per hour, though they do not cite anything to support this. Assuming their assertion is correct, minimum wage plus 30% would be $8.78. The lowest hourly rate listed in the collective bargaining agreement is $25.05.

requirement that premium pay be provided for *all* hours worked in excess of eight in a day or forty in a week.[4]

The majority is willing to accept SCIE's interpretation of the collective bargaining agreement and to proceed from there. I disagree with the majority because, under the collective bargaining agreement, it is the province of a "neutral arbitrator assigned from [a designated panel] of neutral arbitrators" to offer the definitive interpretation of the collective bargaining agreement, not a single party to that agreement.[5] SCIE's interpretation of the collective bargaining agreement may very well be incorrect. If that is the case, the collective bargaining agreement is likely to satisfy Section 514's requirements, leaving Gregory solely with a collectively bargained remedy. Given this distinct possibility, I believe that, as a matter of labor policy and of law, Gregory must pursue his collectively bargained rights first.

Congress passed the Labor Management Relations Act in order to: "promot[e] the arbitration of labor contract disputes [and] secur[e] the uniform interpretation of labor contracts."[6] Requiring Gregory to seek a definitive interpretation of the collective bargaining agreement comports with this policy goal. Moreover, requiring

him to do so does not tread on California's "authority to enact minimum labor standards."[7] If an arbitrator deems SCIE's interpretation correct, the collective bargaining agreement would indeed fail to satisfy the requirements of Section 514, and Gregory would have a strong and clear-cut state law claim under Section 510.

As a matter of law, Gregory must pursue his collectively bargained remedies first: determining whether the collective bargaining agreement meets the requirements of Section 514 is an inquiry that is "inextricably intertwined with consideration of the terms of the labor contract."[8] Thus, the LMRA preempts the question.[9] I therefore dissent.

---

4. *See* Cal. Lab.Code § 514.

5. The collective bargaining agreement fails to specify how work time should be calculated in order to trigger overtime. However, it clearly contemplates payment for overtime work. It includes detailed descriptions of various colorfully-named kinds of overtime (from plain "overtime" to "golden hours"). Thus, in order to determine when overtime must be paid, one must look beyond the plain language of the agreement to such things as industry practice, the course of bargaining among the parties, the agreement as a whole, etc. In other words, one must interpret the agreement.

6. *Balcorta v. Twentieth Century–Fox Film Corp.*, 208 F.3d 1102, 1108–09 (9th Cir.2000).

7. *Id.* at 1108; *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 211–12, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985).

8. *Firestone v. S. Cal. Gas Co.*, 219 F.3d 1063, 1065 (9th Cir.2000) (internal quotation marks and citation omitted) (holding that dispute could not be resolved without interpreting the collective bargaining agreement where dispute turned on whether plaintiffs were receiving a "premium wage rate" for overtime and were therefore exempted from Section 510's requirements).

9. *Id.* at 1065–66.