18 Cal.Rptr.3d 514 (2004)
122 Cal.App.4th 68
Eddy Korkiat PRACHASAISORADEJ, Plaintiff and Appellant,
v.
RALPHS GROCERY COMPANY, Inc., Defendant and Respondent.
Nos. B165498, B168668.
Court of Appeal, Second District, Division Two.
September 8, 2004.
Rehearing Denied October 7, 2004.
Review Granted December 15, 2004.
*517 Kumetz & Glick, Fred Kumetz, Stephen Glick, Los Angeles; Law Offices of Ian Herzog, Ian Herzog, Santa Monica; Daniels, Fine, Israel & Schonbuch, Paul R. Fine, Scott A. Brooks and Craig S. Momita, Los Angeles, for Plaintiff and Appellant.
Thelen Reid & Priest, Thomas E. Hill, Los Angeles, and Robert Spagat, San Francisco, for Defendant and Respondent. *515
*516 DOI TODD, J.
Plaintiff and appellant Eddy Prachasaisoradej appeals from a judgment of dismissal and award of attorney fees following the trial court's sustaining a demurrer without leave to amend in favor of defendant and respondent Ralphs Grocery Company. Appellant alleged, both individually and as an asserted class representative, that Ralphs's bonus calculations violated Business and Professions Code section 17200 and certain Labor Code provisions. The trial court concluded that appellant's claims were preempted by section 301 of the Labor Management Relations Act (29 U.S.C. § 185(a)).
We reverse. We hold that appellant's claims are not preempted because they involve independent rights that neither derive from nor require interpretation of a collective bargaining agreement. Moreover, none of the other grounds raised in Ralphs's demurrer provides a basis for affirmance. Accordingly, we reverse both the judgment of dismissal and the award of attorney fees to Ralphs.

FACTUAL AND PROCEDURAL BACKGROUND
On appeal from a judgment of dismissal following a demurrer sustained without leave to amend, we assume the truth of all well-pleaded facts, as well as those that are judicially noticeable. (Howard Jarvis Taxpayers Assn. v. City of La Habra (2001) 25 Cal.4th 809, 814, 107 Cal. Rptr.2d 369, 23 P.3d 601; Blank v. Kirwan (1985) 39 Cal.3d 311, 318, 216 Cal.Rptr. 718, 703 P.2d 58.)
Appellant is employed by Ralphs as a produce manager. Throughout his employment, he and other similarly situated employees were paid a bonus "that was calculated using a formula which includes deductions for any expenses and losses due *518 to cash shortages, merchandise shortages and shrinkage, workers' compensation, tort claims by non-employees, and other losses beyond Plaintiffs [sic] control. . . ." According to appellant, "[t]hrough this method of compensation, Defendants wrongfully deduct expenses from the wages of their employees, including Plaintiffs, which expenses are required by law to be borne by the Defendant employers. In other words, the Plaintiffs carry the burden of losses from their respective stores."
Appellant filed his original complaint on July 13, 2001 and his first amended complaint on July 27, 2001. Appellant sought to bring a class action alleging that Ralphs's improper calculation of earnings violated Business and Professions Code section 17200 and Labor Code sections 221, 400-410 and 3751. He sought injunctive relief and damages.
On September 10, 2001, Ralphs filed a motion to remove the matter to federal court on the ground that section 301 of the Labor Management Relations Act (29 U.S.C. § 185(a)) (section 301) preempted appellant's action, as appellant's employment was governed by a collective bargaining agreement (CBA). Once the case had been removed, appellant filed a motion to remand the matter in the United States District Court for the Central District of California. Appellant contended that removal was improper because his complaint alleged no federal claim. According to appellant, his state-law claims were not based on any asserted breach of a CBA, were wholly independent of any rights provided by a CBA, and were not substantially dependent on an analysis of any CBA.
On the same date that appellant filed his motion to remand, the Honorable Edward Rafeedie, Senior United States District Judge, remanded the case to state court for lack of subject matter jurisdiction. The federal court stated: "Defendants have pointed to no specific language in the CBA that will need to be interpreted in the course of this action. Though the offending formula may be the by-product of the collective bargaining process, it is nowhere to be found in the CBA itself, and thus there is no indication that evaluation of the formula's legality will entail interpretation of the terms of the CBA." The court stated that its conclusion would be no different even if resolution of appellant's claims required reference to the CBA, noting that Ninth Circuit authority has held that where "the `only controversy concerns the legality of the agreements under state law,' there is no federal preemption under § 301."
Following remand, appellant filed the operative, second amended complaint on July 11, 2002. He alleged four causes of action: (1) Unlawful deductions from earnings in violation of Labor Code sections 221, 400-410 and 3751, and title 8 of the California Code of Regulations, section 11070; (2) unlawful and unfair business practices concerning earnings bonus calculations in violation of Labor Code sections 221, 400-410 and 3751, and Business and Professions Code section 17200; (3) unlawful and unfair business practices regarding unlawful deductions for costs for workers' compensation in violation of Labor Code sections 221, 400-410 and 3751, and Business and Professions Code section 17200; and (4) failure to pay wages upon discharge in violation of Labor Code section 201. Appellant sought injunctive and monetary relief.
Ralphs demurred on the grounds that section 301 preempted all causes of action, that the National Labor Relations Act (29 U.S.C. § 151 et seq.) (NLRA) preempted the second and third causes of action, and that appellant alleged no violation of state law. With respect to section 301 preemption, Ralphs asserted that since October *519 1995, appellant's employment had been governed by two successive CBA's which provided in pertinent part: "BONUS PAYMENTS. Bonus or lump sum payments to employees, other than regular wage payments, shall not be used to defeat the wage provisions of this [CBA]." In view of this provision, Ralphs contended that because the bonus plan was the product of collective bargaining, appellant's claim for additional bonus payments necessarily stemmed from the CBA provision. According to Ralphs, section 301 therefore preempted appellant's claims because they were founded on rights created by the CBA and because they were substantially dependent on an analysis and interpretation of the CBA.
The trial court sustained the demurrer without leave to amend. The court reasoned that the facts before it showed that appellant was a union member and that, therefore, "his claims for wages pursuant to a bonus plan are founded on rights created by a collective bargaining agreement." The trial court found that section 301 preempted appellant's claims because appellant could not assert any rights independent of those provided by the collective bargaining agreement. The ruling further stated: "Alternatively, evaluation of plaintiff's claim for wages is intertwined with consideration of the terms of the labor contract."
Ralphs then filed a motion pursuant to Labor Code section 218.5 to include an award of attorney fees in the amount of $320,325.52 as an element of costs. The trial court granted Ralphs's motion, ruling that the issuance of such an award was mandatory under Labor Code section 218.5. The court, however, exercised it discretion to reduce the award to $275,000.
Appellant appealed separately from both the judgment and the attorney fee award. We granted appellant's motion to consolidate the appeals.

DISCUSSION
On appeal, we review the trial court's sustaining of a demurrer without leave to amend de novo, exercising our independent judgment as to whether a cause of action has been stated as a matter of law. (People ex rel. Lungren v. Superior Court (1996) 14 Cal.4th 294, 300, 58 Cal.Rptr.2d 855, 926 P.2d 1042.) We assume the truth of properly pleaded allegations in the complaint and give the complaint a reasonable interpretation, reading it as a whole and with all its parts in their context. (Stop Youth Addiction, Inc. v. Lucky Stores, Inc. (1998) 17 Cal.4th 553, 558, 71 Cal.Rptr.2d 731, 950 P.2d 1086.) However, we may disregard allegations which are contrary to law or to a fact of which judicial notice may be taken. (Wolfe v. State Farm Fire & Casualty Ins. Co. (1996) 46 Cal.App.4th 554, 559-560, 53 Cal. Rptr.2d 878.) We apply the abuse of discretion standard in reviewing the trial court's denial of leave to amend. (Blank v. Kirwan, supra, 39 Cal.3d at p. 318, 216 Cal.Rptr. 718, 703 P.2d 58.) Appellant bears the burden of proving the trial court erred in sustaining the demurrer or abused its discretion in denying leave to amend. (Ibid.)
We conclude that the trial court erred in sustaining Ralphs's demurrer on the ground that section 301 preempts appellant's claims. The state-law statutory violations alleged in appellant's complaint involve independent rights that neither derive from the CBA nor require an interpretation of the CBA. Further, we conclude that the demurrer would not have been properly sustained on the grounds of NLRA preemption or failure to state a claim. For these reasons, the *520 judgment and attorney fee award must be reversed.

A. Section 301 Does Not Preempt Appellant's State-Law Claims.

1. Section 301 preemption.
Section 301 is a jurisdictional statute, under which "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties. . . ." (29 U.S.C. § 185(a).) The seminal case of Textile Workers v. Lincoln Mills (1957) 353 U.S. 448, 456, 77 S.Ct. 912, 1 L.Ed.2d 972, held that section 301 constituted a federal mandate to fashion a body of federal law to apply to resolve disputes involving federal labor contracts. Thus, as a result of section 301, "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." (Allis-Chalmers Corp. v. Lueck (1985) 471 U.S. 202, 211, 105 S.Ct. 1904, 85 L.Ed.2d 206 (Allis-Chalmers).)
Humble v. Boeing Co. (9th Cir.2002) 305 F.3d 1004 summarized the current state of the law with respect to section 301 preemption. "Section 301 of the LMRA provides that all suits seeking relief for violation of a CBA may be brought in federal court. The Supreme Court has held in a variety of contexts that § 301 acts to preempt state law claims that substantially depend on the CBA, that are premised on negotiable or waivable state law duties the content of which has been covered by the CBA, or that seek to enforce the terms of the CBA, for example, breach of contract claims. Section 301 preemption has been applied to generate and protect a body of consistent federal law interpreting CBA provisions, and to prevent plaintiffs from using state law litigation to side-step or alter the balance of the negotiated provisions of a CBA and the arbitration provisions contained therein. However, the Supreme Court has repeatedly admonished that § 301 preemption is not designed to trump substantive and mandatory state law regulation of the employee-employer relationship, § 301 has not become a `mighty oak' that might supply cover to employers from all substantive aspects of state law." (Humble at p. 1007, fns. omitted.)[1]
Thus, the United States Supreme Court has cautioned that "[i]n extending the pre-emptive effect of § 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." (Allis-Chalmers, supra, 471 U.S. at p. 212, 105 S.Ct. 1904.) "Clearly, § 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law." (Ibid.) In Livadas v. Bradshaw (1994) 512 U.S. 107, 114 S.Ct. 2068, 129 *521 L.Ed.2d 93, the court provided further clarification, stating: "[Section] 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law. . . . [I]t is the legal character of a claim, as `independent' of rights under the collective-bargaining agreement . . . (and not whether a grievance arising from `precisely the same set of facts' could be pursued . . .) that decides whether a state cause of action may go forward." (Id. at pp. 123-124, 114 S.Ct. 2068, fns. omitted.) In that case, section 301 did not preempt the plaintiff's claim that her employer willfully failed to pay her wages promptly upon severance in violation of Labor Code section 203, because the issue "was a question of state law, entirely independent of any understanding embodied in the collective-bargaining agreement between the union and the employer." (512 U.S. at p. 125, 114 S.Ct. 2068; see also Lingle v. Norge Division of Magic Chef, Inc. (1988) 486 U.S. 399, 407, 108 S.Ct. 1877, 100 L.Ed.2d 410 [state-law claim for retaliatory discharge not preempted by section 301 because resolution of the claim did not require construing the collective bargaining agreement, even though collective bargaining agreement contained provisions prohibiting wrongful discharge].)
To determine whether or not a state-law claim is preempted according to these guidelines, "[t]he plaintiff's claim is the touchstone for this analysis; the need to interpret the CBA must inhere in the nature of the plaintiff's claim." (Cramer v. Consolidated Freightways, Inc. (2001) 255 F.3d 683, 691; accord, Gregory v. SCIE, LLC (9th Cir.2003) 317 F.3d 1050, 1052; Humble v. Boeing Co., supra, 305 F.3d at p. 1008.) We therefore turn to the claims raised by appellant's complaint.

2. Appellant's state-law claims involve nonnegotiable rights not subject to preemption.
Appellant alleged that Ralphs's manner of calculating bonuses by deducting amounts for workers' compensation expenses, cash and merchandise shortages, tort claims, and other losses beyond the employees' control violated Labor Code sections 221, 400-410 and 3751, and title 8 of the California Code of Regulations, section 11070. Appellant also alleged that the same statutory violations constituted unlawful and unfair business practices in violation of Business and Professions Code section 17200. In addition, appellant alleged that Ralphs's failure to pay wages upon discharge violated Labor Code section 201.[2]
The Labor Code provisions at issue, as well as the regulation, are designed to protect employees. "`California courts have long recognized wage and hours laws "concern not only the health and welfare of the workers themselves, but also the public health and general welfare." [Citation.]' . . . [T]here is in this state a fundamental and substantial public policy protecting an employee's wages, and that protection includes freedom from setoffs. . . ." (Phillips v. Gemini Moving Specialists (1998) 63 Cal.App.4th 563, 574, 74 Cal.Rptr.2d 29.) In accordance with this policy, Labor Code section 221 provides: "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." According to Finnegan v. Schrader (2001) 91 Cal.App.4th 572, 584, 110 Cal.Rptr.2d 552, "[s]ection 221 was enacted in order to prevent employers from utilizing secret deductions *522 or kickbacks to pay employees less than their stated wages."
Labor Code "[s]ections 400 to 410 provide the limited circumstances under which an employer can exact a cash bond from its employee and the protections afforded to an employee when such bonds are permitted." (Ralphs Grocery Co. v. Superior Court, supra, 112 Cal.App.4th at p. 1097, 5 Cal.Rptr.3d 687.) These statutes were designed to prevent embezzlement or misappropriation of employee funds deposited in trust with an employer and "`to protect that larger portion of the public who are employees and who, in many instances, are forced through economic necessity to find employment by meeting whatever requirements are set by a prospective employer.'" (Ibid., quoting People v. Vandersee (1956) 139 Cal.App.2d 388, 391, 294 P.2d 77.)
Labor Code section 3751 "prohibits an employer from receiving any employee contribution or taking any deduction from employee earnings to cover the cost of compensation." (Albillo v. Intermodal Container Services, Inc. (2003) 114 Cal.App.4th 190, 201, 8 Cal.Rptr.3d 350; Lab.Code, § 3751, subd. (a) ["No employer shall exact or receive from any employee any contribution, or make or take any deduction from the earnings of any employee, either directly or indirectly, to cover the whole or any part of the cost of compensation under this division"].) Pursuant to this provision, an employer must bear the cost of securing compensation and cannot use an employee's earnings to contribute to or offset the cost of workers' compensation. (E.g., Jones v. Kaiser Industries Corp. (1987) 43 Cal.3d 552, 556-557, 237 Cal.Rptr. 568, 737 P.2d 771 [according to Lab.Code, § 3751, "the entire cost of workers' compensation benefits is borne by the employer"]; In re Marriage of Corriveau (1986) 183 Cal.App.3d 1012, 1016, 228 Cal.Rptr. 563 ["Labor Code section 3751 prohibits financing workers' compensation benefits from employee contributions"].)
Labor Code section 201 provides that "the wages earned and unpaid at the time of discharge are due and payable immediately." In turn, Labor Code section 203 imposes penalties on an employer who willfully fails to pay a discharged employee's wages. The purpose of these statutes is to protect employee wages, as "`the prompt payment of wages due an employee is a fundamental public policy of this state.' [Citation.]" (Phillips v. Gemini Moving Specialists, supra, 63 Cal.App.4th at p. 571, 74 Cal.Rptr.2d 29.)
Finally, Labor Code section 1173 authorizes the Industrial Welfare Commission "to promulgate orders regulating wages, hours and working conditions throughout the state." (Ralphs Grocery Co. v. Superior Court, supra, 112 Cal.App.4th at p. 1097, 5 Cal.Rptr.3d 687.) The wage order allegedly violated by RalphsCalifornia Code of Regulations, title 8, section 11070, subdivision 8, applicable to the mercantile industryprovides: "No employer shall make any deduction from the wage or require any reimbursement from an employee for any cash shortage, breakage, or loss of equipment, unless it can be shown that the shortage, breakage, or loss is caused by a dishonest or willful act, or by the gross negligence of the employee." (See also Cal.Code Regs., tit. 8, § 11070, subds. 1(A)(1) & (2) [exempting executive and administrative employees from the wage order if their duties and responsibilities meet certain specified criteria involving the management of the enterprise for which they are employed].)
With the exception of Labor Code section 201, the violation of any of the foregoing provisions is a crime under California *523 law.[3] A violation of Labor Code section 201 results in civil monetary penalties imposed on the employer. (Lab.Code, § 203.) Moreover, the protections of Labor Code section 221 are nonnegotiable. (Lab.Code, § 219 ["no provision of this article can in any way be contravened or set aside by a private agreement, whether written, oral, or implied"]; see also Mechanical Contractors Assn. v. Greater Bay Area Assn. (1998) 66 Cal.App.4th 672, 688, 78 Cal.Rptr.2d 225 ["`Contracts that are contrary to express statutes or to the policy of express statutes . . . are illegal contracts. . . .'"].)
The United States Supreme Court has concluded that the preemptive reach of section 301 does not extend to "nonnegotiable rights conferred on individual employees as a matter of state law. . . ." (Livadas v. Bradshaw, supra, 512 U.S. at p. 123, 114 S.Ct. 2068.) As cogently explained in Allis-Chalmers, supra, section 301 should not be read so broadly so as to displace all state laws regulating labor conditions: "[N]ot every dispute concerning employment, or tangentially involving a provision of a collective bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law. Section 301 on its face says nothing about the substance of what private parties may agree to in a labor contract. Nor is there any suggestion that Congress, in adopting § 301, wished to give the substantive provisions of private agreements the force of federal law, ousting any inconsistent state regulation. Such a rule of law would delegate to unions and unionized employers the power to exempt themselves from whatever state labor standards they disfavored. Clearly, § 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law. In extending the pre-emptive effect of § 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." (471 U.S. at pp. 211-212, 105 S.Ct. 1904, fns. omitted & italics added.)
Applying this reasoning, courts have repeatedly recognized that an employee's claim based on "`"rights arising out of a statute designed to provide minimum substantive guarantees to individual workers"'" is not preempted because it may exist without any need to interpret a collective bargaining agreement. (Lingle v. Norge Division of Magic Chef, Inc., supra, 486 U.S. at p. 412, 108 S.Ct. 1877, italics omitted; see also Hawaiian Airlines, Inc. v. Norris (1994) 512 U.S. 246, 252, 114 S.Ct. 2239, 129 L.Ed.2d 203 ["Pre-emption of employment standards `within the traditional police power of the State' `should not be lightly inferred'"]; Soldinger v. Northwest Airlines, Inc. (1996) 51 Cal.App.4th 345, 359, 58 Cal.Rptr.2d 747 [same].) Appellant's claims here involve alleged violations of statutory minimum labor standardsclaims that typically are not subject to preemption.
Particularly relevant here, the Ninth Circuit, in Balcorta v. Twentieth Century-Fox Film Corp. (2000) 208 F.3d 1102, held that section 301 did not preempt an employees claim for penalties under Labor Code section 203 for the employers alleged violation of Labor Code section 201.5 (requiring *524 that discharged employees in the motion picture industry be paid within a specified time frame). Balcorta explained that section 301 does not permit parties to a CBA to waive nonnegotiable state rights like those conferred by Labor Code section 201.5: "Were we to extend the 301 complete preemption doctrine to allow for preemption by virtue of such a waiver, parties would be able to immunize themselves from suit under state-laws of general applicability by simply including their unlawful behavior in a labor contract. [Citations.]" (Balcorta, at p. 1111.)
We are also guided by Lujan v. Southern Cal. Gas Co. (2002) 96 Cal.App.4th 1200, 117 Cal.Rptr.2d 828. There, through the collective bargaining process, the employer implemented a compensation plan for its meter readers, which included a formula by which to compensate them for overtime hours. The Labor Commissioner brought an action against the employer, alleging that the formula violated the states overtime law, embodied in California Code of Regulations, title 8, section 11040. (Lujan, at pp. 1203-1204, 117 Cal. Rptr.2d 828.) Noting "that establishment of labor standards falls within the traditional police power of the state," Lujan held that section 301 did not preempt the challenge to the overtime compensation scheme. (Lujan, at p. 1209, 117 Cal. Rptr.2d 828.) The court stated: "California law provides clear standards regarding rates of overtime pay which establish rights independent of a collective bargaining agreement. An employer and a union cannot bargain away an employees rights under state wage statutes. [Citations.]" (Id. at p. 1211, 117 Cal.Rptr.2d 828.)
Indeed, cases consistently hold that section 301 must not be construed to give employers and unions the power to displace state regulatory laws. As succinctly stated in Cramer v. Consolidated Freightways, Inc., supra: "Section 301 does not preempt claims to vindicate nonnegotiable state law rights." (255 F.3d at p. 697 [holding that employees claim involving challenge to installation of two-way mirrors to facilitate drug detection, which constituted a Penal Code violation, was not preempted]; accord, Humble v. Boeing Co., supra, 305 F.3d at p. 1009 [state law reasonable accommodation and retaliation claims not preempted; "Section 301 preemption is not intended to shield an employer from substantive duties that the state might impose"]; Builders Contractors v. Intern. of Elec. Workers (9th Cir. 1997) 109 F.3d 1353, 1357-1358 [claim that union job-targeting program violated California law not preempted; if preemption were extended to such a claim, then "parties would be able to immunize themselves from suit under state-laws of general applicability by simply including their unlawful behavior in a labor contract"]; cf. Adams v. Pacific Bell Directory, supra, 111 Cal.App.4th at pp. 98-100, 3 Cal. Rptr.3d 365 [finding Ninth Circuit decision controlling by reason of the law of the case doctrine, state court concluded that 301 did not preempt action against employer alleging that commission deductions violated Bus. Prof.Code, 17200 and Lab.Code, 221].)
We conclude that section 301 does not preempt appellants claims asserting state-law violations. Our conclusion is consistent with congressional intent to permit states to retain their traditional police powers to regulate labor standards.

3. Appellants claims are neither created by the CBA nor substantially dependent on an analysis of the CBA.
In asserting that section 301 completely preempted appellants claims, Ralphs relies on the two distinct and independent preemption *525 grounds articulated in Caterpillar, Inc. v. Williams (1987) 482 U.S. 386, 394, 107 S.Ct. 2425, 96 L.Ed.2d 318: "Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement." The trial court agreed with Ralphss position in its entirety, and held that section 301 preempted appellants claims because they were "founded on rights created by a collective bargaining agreement" and, alternatively, because "evaluation of plaintiffs claim for wages is intertwined with consideration of the terms of the labor contract."
We disagree. The lone provision in the CBA addressing bonus payments states: "BONUS PAYMENTS. Bonus or lump sum payments to employees, other than regular wage payments, shall not be used to defeat the wage provisions of this [CBA]." Appellant's claims concerning the manner by which bonuses are calculated allegedly in violation of California law are neither founded on this provision nor dependent upon an interpretation of this provision.
First, Ralphs asserts that appellant's claims are necessarily founded on the CBA, since appellant's right to a bonus derives from the CBA. In other words, since the existence of a bonus plan is the result of collective bargaining, appellant's claims concerning the manner by which bonuses are calculated therefore must be wholly dependent on rights created by the CBA. This argument, however, not only ignores the foregoing authority concerning the inability of parties to a CBA to insulate themselves from state-law regulations, but also takes the concept of rights created by a CBA one step too far. Ralphs's argument is essentially that because the right to a bonus emanates from the CBA, any claim touching on the payment of the bonus is preempted. But, if this were true, it would necessarily follow that any claim concerning the payment of wages would always be preempted, since the payment of wages derives from a CBA.
The United States Supreme Court has expressly rejected such an expansive reading of section 301 preemption. "Section 301 does not . . . require that all `employment-related matters involving unionized employees' be resolved through collective bargaining and thus be governed by a federal common law created by § 301. [Citation.] The Court has stated that `not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law.' [Citation.] Claims bearing no relationship to a collective-bargaining agreement beyond the fact that they are asserted by an individual covered by such an agreement are simply not pre-empted by § 301." (Caterpillar, Inc. v. Williams, supra, 482 U.S. at p. 396, fn. 10, 107 S.Ct. 2425.) Thus, in order for preemption to apply because a claim is founded on rights created by a CBA, the particular right at issue must derive its existence from the CBA rather than from an independent source. In Lingle v. Norge Division of Magic Chef, Inc., supra, the court clarified this distinction: "[Section] 301 pre-emption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements. In other words, even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved *526 without interpreting the agreement itself, the claim is independent of the agreement for 301 pre-emption purposes." (486 U.S. at pp. 409-410, 108 S.Ct. 1877, fns. omitted.) For this reason, Lingle held that an employees claim for retaliatory discharge in violation of state law was not preempted by section 301, even though the CBA at issue covered the same claim by expressly requiring "just cause" for termination. (Lingle, at pp. 412-413, 108 S.Ct. 1877.)
Lujan v. Southern Cal. Gas Co., supra, 96 Cal.App.4th 1200, 117 Cal.Rptr.2d 828, similarly emphasized that a state-law violation may be resolved independently of a CBA, even when the CBA generally addresses the subject matter of the violation. The Lujan court held a claim that an overtime compensation plan provided in a CBA violated a California wage order was not preempted: "This case does not present a disputed disagreement over interpretation of the collective bargaining agreement. The parties do not dispute how Employer calculates the overtime wages. Thus, the issue is not how to resolve a dispute over the interpretation of the [compensation plan implemented through the collective bargaining process], but a legal question of whether the [compensation plan] complies with state law." (Id. at p. 1210, 117 Cal.Rptr.2d 828; accord, Balcorta v. Twentieth Century-Fox Film Corp., supra, 208 F.3d at p. 1111 [finding that employer violated Lab.Code, 201.5 by not providing timely wage payment upon discharge was not preempted, even though the CBA contained a provision setting forth time requirements governing the payment of wages after discharge, reasoning that "whether a violation has occurred is controlled only by the provisions of the state statute and does not turn on whether the payment was timely under the provisions of the collective bargaining agreement"].)
Thus, contrary to Ralphss position, the fact that an employees claim may involve a right which was the subject of collective bargaining does not resolve the question of preemption. Rather, when an employees claim is based on state law independent of the rights afforded by the CBAeven if the CBA also addresses those rightsthe claim is not preempted. Here, the CBA contains a provision authorizing the payment of bonuses, requiring only that such bonuses may not be used to defeat other wage provisions. Appellants claims do not challenge whether an employer may pay a bonus or whether the bonuses paid in the case were used to defeat wages. Instead, the alleged dispute is based on state laws regulating the extent to which employers may take deductions from such bonus payments. The rights which appellant seeks to vindicate do not derive from the CBA.[4]
*527 Second, Ralphs asserts that appellants claims are preempted because they are "substantially dependent on analysis of a collective-bargaining agreement." (Caterpillar, Inc. v. Williams, supra, 482 U.S. at p. 394, 107 S.Ct. 2425; Allis-Chalmers, supra, 471 U.S. at p. 220, 105 S.Ct. 1904.) But, as we have acknowledged, the single sentence in the CBA pertaining to bonus payments provides only that "[b]onus or lump sum payments to employees, other than regular wage payments, shall not be used to defeat the wage provisions of this [CBA]." We are at a loss to see how resolution of appellant's state-law claims requires any interpretation of this provision.
In cases like this, where a provision in a CBA is only tenuously related to a state-law claim, courts have been quick to caution that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement is pre-empted by § 301 or other provisions of the federal labor law." (Allis-Chalmers, supra, 471 U.S. at p. 211, 105 S.Ct. 1904.) Thus, "the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished [citation]." (Livadas v. Bradshaw, supra, 512 U.S. at p. 124, 114 S.Ct. 2068.)
Gregory v. SCIE, LLC, supra, 317 F.3d 1050, illustrates the distinction between a preempted claim requiring interpretation of a CBA and a nonpreempted claim requiring mere consultation of a CBA. There, the employee plaintiff brought an action in state court, alleging that his employer's failure to pay him premium wage rates for overtime work violated certain Labor Code provisions, as well as Business and Professions Code section 17200. After the employer removed the action, the Ninth Circuit remanded it, carefully explaining why resolution of the plaintiff's claims required interpretation of state lawnot the CBA: "While overtime is calculated in accordance with the terms of the CBA, this case involves no issue concerning the method of calculation. The issue here is not how overtime rates are calculated but whether the result of the calculation complies with California law, i.e., whether Gregory is paid at premium wage rates for `[a]ny work in excess of eight hours in one workday and any work in excess of 40 hours in any one work week' (emphasis added), as required by California law. Cal. Lab.Code, § 510. The issue arises because the work Gregory performed for SCIE on different productions exceeded in the aggregate eight hours in one work day and forty hours in one work week. He was not paid premium wage rates because SCIE does not lump together different productions to calculate overtime hours. The dispute between the parties may require interpretation of the words `any work' in the statute, but its resolution does not require reference to, much less interpretation of, the CBA." (Gregory v. SCIE, LLC, supra, 317 F.3d at p. 1053.)[5]
*528 Appellant's dispute does not involve the issue addressed in the CBA of whether bonuses are used to defeat the employees' regular wages. Rather, the dispute centers on the independent issue of whether the calculation of the bonusesa calculation not provided in the CBAviolates California law. We do not believe that this claim requires any interpretation of the relatively abbreviated and straightforward bonus provision sentence in the CBA.[6] (E.g., Cramer v. Consolidated Freightways, Inc., supra, 255 F.3d at p. 694 [claim that employer's surveillance cameras employed to detect drug use in restrooms violated employees' privacy did not require interpretation of CBA provisions addressing use of camera surveillance and videotapes in the context of theft or dishonesty allegations, "particularly when a cursory examination of those provisions makes clear they apply to a completely different context and set of circumstances"]; Lujan v. Southern Cal. Gas Co., supra, 96 Cal.App.4th at p. 1210, 117 Cal.Rptr.2d 828 [claim that collectively bargained compensation plan violated state law did not require interpretation of the plan, as the parties did not dispute how wages were calculated, but rather, only whether the calculation comported with state law].)
In the event that Ralphs's bonus calculation is found to violate California law, Ralphs asserts that it will be necessary to "interpret" the bonus provision to determine what remedy the provision authorizesi.e., modification or elimination of bonus payments. In Lingle v. Norge Division of Magic Chef, Inc., supra, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410, the court rejected a similar argument, explaining that a state-law claim is not preempted simply because it may be necessary to consult a CBA to determine the damages to which an employee prevailing in a state-law action may recover. (Id. at p. 413, fn. 12, 108 S.Ct. 1877.) Indeed, while appellant's claim may require a court to "consider" or "refer to" the bonus provision in the CBA, its resolution plainly does not require interpretation of the CBA. (Balcorta v. Twentieth Century-Fox Film Corp., supra, 208 F.3d at pp. 1109-1110.)
In sum, appellant's Business and Professions section 17200 and Labor Code claims are premised on independent state-law rights and their resolution does not require interpretation of the CBA. Accordingly, we conclude that the trial court erred in sustaining Ralphs's demurrer on the ground that section 301 preempted appellant's claims.

*529 B. The Demurrer Would Not Have Been Properly Sustained on the Other Grounds Asserted by Ralphs.
On appeal from a judgment of dismissal entered after a demurrer has been sustained without leave to amend, we must affirm the judgment if it is correct under any theory. (Hendy v. Losse (1991) 54 Cal.3d 723, 742, 1 Cal.Rptr.2d 543, 819 P.2d 1.) Thus, even though the trial court sustained the demurrer on the sole ground that section 301 preempted appellant's claims, we address the two other grounds raised by Ralphs in support of its demurrer. We conclude that neither ground would have been a proper basis on which to sustain the demurrer.

1. The NLRA does not preempt appellant's claims.
The NLRA contains no statutory preemption clause. (29 U.S.C. § 151 et seq.) Nonetheless, the Supreme Court has articulated two distinct doctrines for determining NLRA preemption. Under "Garmon" preemption, "state regulations and causes of action are presumptively preempted if they concern conduct that is actually or arguably either prohibited or protected by the Act." (Belknap, Inc. v. Hale (1983) 463 U.S. 491, 498, 103 S.Ct. 3172, 77 L.Ed.2d 798; see also San Diego Unions v. Garmon (1959) 359 U.S. 236, 245, 79 S.Ct. 773, 3 L.Ed.2d 775 (Garmon).) "Machinists" preemption, the other NLRA preemption doctrine, prohibits state interference in activity that Congress intended to be unregulated. (Metropolitan Life Ins. Co. v. Massachusetts (1985) 471 U.S. 724, 749, 105 S.Ct. 2380, 85 L.Ed.2d 728; see Machinists v. Wisconsin Emp. Rel. Commn (1976) 427 U.S. 132, 149-151, 96 S.Ct. 2548, 49 L.Ed.2d 396 (Machinists).) Because neither party has specified under which doctrine NLRA preemption is asserted, we address both grounds.
The court, in Service by Medallion, Inc. v. Clorox Co. (1996) 44 Cal.App.4th 1807, 1813-1814, 52 Cal.Rptr.2d 650, explained how to analyze claims involving Garmon preemption: "In addressing a claim of preemption the court must determine whether the conduct at issue was arguably protected or arguably prohibited by section 7 or section 8 of the NLRA. [Citation.] If so, then the state court ordinarily has no power to adjudicate it and must defer to the exclusive jurisdiction of the National Labor Relations Board (NLRB). On the other hand, when the challenged activity is a merely peripheral concern of the NLRA, it will not be inferred that Congress intended to deprive states of the power to act. [Citation.] Likewise, states may regulate conduct that touches on interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, it could not be inferred that Congress intended to deprive the State of the power to act. [Citations.]"
With these limitations in mind, courts have repeatedly concluded that Congress did not intend for Garmon preemption to apply to regulations setting minimum labor standards. Rather, the focus of the NLRA is the bargaining process and its "declared purpose is to remedy [t]he inequality of bargaining power between employees who do not possess full freedom of association or actual liberty of contract, and employers who are organized in the corporate or other forms of ownership association. 1, 29 U.S.C. 151." (Metropolitan Life Ins. Co. v. Massachusetts, supra, 471 U.S. at p. 753, 105 S.Ct. 2380.) State-imposed minimum labor standards that apply equally to all employees do not affect the interests implicated by the NLRAthey neither encourage nor discourage the collective bargaining process. (Id. at p. *530 755, 105 S.Ct. 2380.) As Metropolitan Life explained: "[T]here is no suggestion in the legislative history of the [NLRA] that Congress intended to disturb the myriad state laws then in existence that set minimum labor standards, but were unrelated in any way to the processes of bargaining or self-organization. To the contrary, we believe that Congress developed the framework for self-organization and collective bargaining of the NLRA within the larger body of state law promoting public health and safety." (Id. at p. 756, 105 S.Ct. 2380.)
On the basis of this reasoning, we held in People v. Hwang (1994) 25 Cal.App.4th 1168, 31 Cal.Rptr.2d 61 that the NLRA does not preempt the Labor Codes prevailing wage laws (Lab.Code, 1770 et seq.). Acknowledging Supreme Court authority "that a states establishment of minimum substantive labor standards does not undercut collective bargaining or violate the NLRA," we concluded that prevailing wage laws "clearly establish a minimum substantive requirement for contracts between the government and private contractors, protect union and nonunion employees alike, and allow for collective bargaining to obtain even greater benefits than those provided by law. In short, the Labor Codes prevailing wage laws (1770 et seq.) are not preempted by the NLRA." (Hwang, at pp. 1180-1182, 31 Cal.Rptr.2d 61; accord, Metropolitan Life Ins. Co. v. Massachusetts, supra, 471 U.S. at p. 758, 105 S.Ct. 2380 [NLRA does not preempt state-mandated benefit law]; Viceroy Gold Corp. v. Aubry (9th Cir.1996) 75 F.3d 482, 490 [Garmon preemption not implicated by Lab.Code, 750.5, which sets maximum work hours for certain types of employees]; Contract Services Network, Inc. v. Aubry (9th Cir. 1995) 62 F.3d 294, 298 [Garmon preemption not implicated by Lab.Code, 3700, which requires employers to comply with workers compensation funding requirements].)
Appellants claims involving prohibitions against unlawful deductions and the timeliness of wage payments after discharge are no different than the claims involving the foregoing Labor Code provisions. They address precisely the type of labor standards that remain under the states broad authority. They are unrelated to the collective bargaining process and conflict with none of the purposes of the NLRA. As the Metropolitan Life court recognized, to conclude otherwise would turn the collective bargaining process on its head: "It would further few of the purposes of the Act to allow unions and employers to bargain for terms of employment that state law forbids employers to establish unilaterally. Such a rule of law would delegate to unions and unionized employers the power to exempt themselves from whatever state labor standards they disfavored. [Citation.]" (Metropolitan Life Ins. Co. v. Massachusetts, supra, 471 U.S. at pp. 755-756, 105 S.Ct. 2380.) Congress could not have intended to penalize union workers by preventing them from benefiting from state labor regulations which impose minimal standards on nonunion employers. (Id. at p. 756, 105 S.Ct. 2380.) There is no Garmon preemption here.
Nor is there preemption under the Machinists doctrine. This strand of preemption is designed to protect activity that is reserved for the free market. (Dillingham Const. N.A., Inc. v. County of Sonoma (9th Cir.1999) 190 F.3d 1034, 1037.) But, like Garmon preemption, Machinists preemption does not apply to the establishment of minimum labor standards. Holding that Machinists preemption did not apply to Californias apprentice prevailing wage law, the Dillingham court stated: "The Machinists preemption doctrine does not preempt a state law which establishes a minimal employment standard not inconsistent with general legislative goals of the NLRA. [Citations.] Federal labor law in *531 this sense is interstitial, supplementing state law where compatible, and supplanting it only when it prevents the accomplishment of the purposes of the federal act. [Citations.] The apprentice prevailing wage law is not preempted by the Machinists doctrine because federal law contemplates and permits regulation of apprenticeship standards and because the apprentice prevailing wage law establishes nothing more than minimum labor standards." (Dillingham Const. N.A., Inc. v. County of Sonoma, supra, 190 F.3d at pp. 1038-1039.)
Again, the Labor Code provisions at issue here set forth minimum labor standards that are not inconsistent with the goals of the NLRA. They are no different than myriad state laws regulating employment conditions that the NLRA does not preempt. (E.g., Malone v. White Motor Corp. (1978) 435 U.S. 497, 504, 505, 98 S.Ct. 1185, 55 L.Ed.2d 443 [Machinists preemption did not apply to state law imposing a pension funding charge on employers who ceased to operate a place of employment or pension plan]; Viceroy Gold Corp. v. Aubry, supra, 75 F.3d at pp. 489-490 [Machinists preemption did not apply to Lab.Code, 750.5, which sets maximum work hours for certain types of employees]; Contract Services Network, Inc. v. Aubry, supra, 62 F.3d at p. 298 ["Workers compensation laws requiring that employers contribute to unemployment and workers compensation funds are minimum labor standards which are not subject to [Machinists] preemption"].) In sum, the NLRA does not preempt appellants claims, and Ralphss demurrer would not have been properly sustained on that ground.

2. Appellant stated valid causes of action under California law.
Ralphs also premised its demurrer on the ground that, even if not preempted, appellants claims failed to allege facts sufficient to state valid causes of action under California law. We need look no further than Ralphs Grocery Co. v. Superior Court, supra, 112 Cal.App.4th 1090, 5 Cal.Rptr.3d 687 to reject this argument.
In Ralphs Grocery Co., Division Seven of this district held that the trial court properly overruled a demurrer to a complaint alleging the identical claims raised in this action, but involving a nonunion employee plaintiff (Swanson). (Ralphs Grocery Co. v. Superior Court, supra, 112 Cal.App.4th at p. 1095, 5 Cal.Rptr.3d 687.) The court summarized: "[B]ased on the allegation that Ralphs includes in its calculation of profit-based bonuses a charge for workers compensation costs, Swanson has stated causes of action, as to both exempt and non-exempt employees, for violation of [Labor Code] section 3751, which prohibits employers from directly or indirectly holding its employees accountable for workers compensation costs. As to non-exempt employees, the alleged calculation based on cash and merchandise shortages is sufficient to withstand demurrer based on the Supreme Courts interpretation in Kerr's [Catering Service v. Department of Indus. Relations (1962) 57 Cal.2d 319, 19 Cal. Rptr. 492, 369 P.2d 20] of a wage order identical in all relevant respects to the order governing non-exempt employees working at Ralphs. . . . Based on our finding Swanson has stated a cause of action pursuant to [Labor Code] section 3751, he is also entitled to pursue his additional claim for unpaid wages due upon discharge." (Id. at pp. 1101-1102 fn. 7, 5 Cal.Rptr.3d 687.)
We find no basis to depart from the conclusion in Ralphs Grocery Co. The decision is based on a sound analysis of the *532 applicable statutes, as well as prior case law prohibiting similar deductions from employee earnings. (See Kerr's Catering Service v. Department of Indus. Relations, supra, 57 Cal.2d at pp. 328-329, 19 Cal. Rptr. 492, 369 P.2d 20; Hudgins v. Neiman Marcus Group, Inc. (1995) 34 Cal.App.4th 1109, 1117, 1123-1124, 41 Cal. Rptr.2d 46; Quillian v. Lion Oil Company (1979) 96 Cal.App.3d 156, 162-163, 157 Cal. Rptr. 740.) Like the courts in Quillian and Ralphs Grocery Co., we see no reasoned basis to differentiate between a commission and a profit-based bonus for the purpose of applying the Labor Code prohibitions. (Ralphs Grocery Co. v. Superior Court, supra, 112 Cal.App.4th at pp. 1104-1105, 5 Cal.Rptr.3d 687; Quillian v. Lion Oil Company, supra, 96 Cal.App.3d at p. 163, 157 Cal.Rptr. 740.)
We elect to follow the Ralphs Grocery Co. decision and, therefore, conclude that appellant has alleged sufficient facts to state valid causes of action under California law.[7]

DISPOSITION
The trial courts order sustaining Ralphss demurrer without leave to amend is reversed, as is the postjudgment order awarding Ralphs attorney fees and costs. The matter is remanded to the trial court and Ralphs is directed to answer appellants complaint. Appellant is awarded costs on appeal.
We concur: BOREN, P.J., and NOTT, J.
NOTES
[1] Though we acknowledge that we need not follow Ninth Circuit authority, we find persuasive the Ninth Circuit's interpretation of the United States Supreme Court cases which we are bound to follow. (See Adams v. Pacific Bell Directory (2003) 111 Cal.App.4th 93, 97, 3 Cal.Rptr.3d 365 ["although not binding, we give great weight to federal appellate court decisions"]; Travelers Cas. & Sur. Co. v. Superior Court (1998) 63 Cal.App.4th 1440, 1454, 75 Cal.Rptr.2d 54 [following "the well-reasoned and on-point decisions of the Ninth Circuit"].)
[2] Appellant's alleged statutory violations are also described in great detail in Ralphs Grocery Co. v. Superior Court (2003) 112 Cal.App.4th 1090, 1096-1101, 5 Cal.Rptr.3d 687.
[3] See Lab.Code, §§ 225 [violation of Lab. Code, § 221 is a misdemeanor], 408 [violation of Lab.Code, § 400 through 410 is a misdemeanor, a violation of Lab.Code, § 405 provides its own criminal penalty], 3751, subd. (a) ["[v]iolation of this subdivision is a misdemeanor"], 1199, subd. (c) [an employer who violates, or refuses or neglects to comply with a Commission order is guilty of a misdemeanor].
[4] A case relied on by Ralphs, Young v. Anthony's Fish Grottos, Inc. (9th Cir.1987) 830 F.2d 993, involved a claim for breach of a CBAnot a claim based on rights independent of those provided by a CBA. The union member plaintiff in Young alleged that her employer breached an oral contract with her to discharge her only for just cause. The court held that section 301 preempted her claim for breach of contract, "[b]ecause any independent agreement of employment [concerning that job position] could be effective only as part of the collective bargaining agreement," . . . Youngs individual contract claim is thus effectively a claim for breach of the CBA." (Young, at pp. 997-998.) Other cases cited by Ralphs likewise involved claims for breach of a CBAi.e., claims seeking to redress rights created by a CBA. (See Antol v. Esposto (3d Cir.1997) 100 F.3d 1111, 1117 [§ 301 preempted employees claims for wages because they were "based squarely on the terms of the collective bargaining agreement"]; Wheeler v. Graco Trucking Corp. (3d Cir. 1993) 985 F.2d 108, 113 ["Wheelers state-law claim for wages allegedly due under the collective bargaining agreement . . . is based squarely on the terms of the collective bargaining agreement" and therefore preempted]; Plumbing, Heating etc. Council v. Howard (1975) 53 Cal.App.3d 828, 831-832, 126 Cal. Rptr. 406 [§ 301 preempted employees claim that he did not receive the wage rate specified in the CBAin other words, 301 preempted claim for breach of a CBA].)
[5] The Gregory court distinguished Firestone v. Southern California Gas Co. (9th Cir.2000) 219 F.3d 1063, a case relied on by Ralphs. (Gregory v. SCIE, LLC, supra, 317 F.3d at p. 1053, fn. 3.) There, the court held that the plaintiff's claim for overtime compensation was preempted, because the issue was whether the CBA's formula for computing "premium wages rates" complied with California's overtime laws. The CBA in Firestone provided for overtime compensation that diminished proportionally with each additional overtime hour. The plaintiffs argued that this rate was not a "premium rate" under California law, while the employer defendant contended that it was a premium rate because the CBA calculation yielded a rate which exceed the employee's regular daily rate. Because the parties disagreed as to the meaning of the CBA terms, the Firestone court held that the CBA must be interpreted to determine whether the negotiated rate provides for premium wage rates required by California law. (Firestone, at pp. 1066-1067.)
[6] This case may be easily contrasted against the judicially-noticed arbitration decision relied on by Ralphs. There, the dispute was whether an employer had the unilateral right to terminate a bonus plan. The parties pointed the arbitrator to an identical bonus provision in a different CBA, together with other CBA provisions concerning the manner in which alterations to the CBA may be made. In the context of these other provisions, the arbitrator concluded that the bonus provision's silence on the issue of the unilateral right to terminate rendered the provision ambiguous, thus requiring the arbitrator to examine the parties' past practices and bargaining history. Here, on the other hand, the only provision at issue states that bonus payments may not be used to defeat wages. Interpretation of this provision is unnecessary to resolve the question of whether Ralphs's deducting certain store losses from its bonus computations comports with California law.
[7] In view of our ruling, we need not address appellants motion for reconsideration concerning the trial courts judicial notice rulings and appellants request for leave to amend. Because we do not believe the issue of leave to amend will recur in view of the fact that the plaintiff whom appellant sought to add in this action (Swanson) is proceeding with an independent action, we express no opinion with respect to appellants motion for leave to amend.