[No. B148811. Second Dist., Div. Four. Mar. 13, 2002.]

ARTHUR LUJAN, as Labor Commissioner, etc., Plaintiff and Respondent,
v.
SOUTHERN CALIFORNIA GAS COMPANY, Defendant and Appellant.

**COUNSEL**

Randall R. Morrow and David B. Reeves for Defendant and Appellant.

William A. Reich for Plaintiff and Respondent.

## OPINION

**HASTINGS, J.**—Summary judgment was granted in favor of respondent, Labor Commissioner of the State of California Department of Industrial Relations, Division of Labor Standards Enforcement, in an action against Southern California Gas Company (hereinafter referred to as Employer).[1] The trial court found that application of a collective bargaining agreement between Employer and its meter readers resulted in certain of the meter readers being paid less than required for overtime pay pursuant to a California labor regulation, Wage Order No. 4-89. Judgment was entered against Employer in an amount stipulated by the parties.

Three determinations were essential to the trial court's resolution of the case: (1) that federal law did not preempt application of state law; (2) that it should defer to respondent's method of calculating the equivalent hourly "regular pay" to determine whether the collective bargaining agreement was at odds with Wage Order No. 4-89, subdivision 3(A); and (3) that the collective bargaining exemption within Wage Order No. 4-89, subdivision 3(G), was not applicable.

We conclude that the trial court did not err on the issue of preemption or in deferring to respondent's method of calculating the equivalent hourly regular pay referenced in Wage Order No. 4-89, subdivision 3(A). But the court did err in its determination that the collective bargaining exemption did not apply to the collective bargaining agreement at issue. Depending on the number of overtime hours worked, application of the formula provided within the collective bargaining agreement may or may not violate the terms of Wage Order No. 4-89. The matter must therefore be remanded for further proceedings to determine whether in any specific instance the wage order was violated.

### BACKGROUND

During the period from April 1995 through April 1998, Employer's gas meter readers were covered under a collective bargaining agreement. Through the collective bargaining process, Employer implemented a new compensation plan for its meter readers in April 1995, known as the "Pay Per Route" (PPR) program. The system in place prior to 1995 compensated the meter readers at a fixed hourly rate. Briefly stated, the PPR provided that meter readers would be paid a flat daily rate for working routes designed with the expectation they would be finished within an eight-hour period.

---

[1] The motion was also brought in the name of the People of the State of California, but only the Labor Commissioner is named as a respondent in this appeal.

Meter readers who took more than eight hours to finish the routes received overtime compensation for the additional hours according to a formula that divided the flat daily rate by the number of hours actually worked that day. As a result, there was no fixed overtime rate paid for hours worked in excess of eight per day.

The Industrial Welfare Commission (IWC) is the state agency empowered to formulate regulations governing employment in California. Those regulations are known as "wage orders." (Lab. Code, §§ 1173, 1178.5, 1182.) The Division of Labor Standards Enforcement, headed by respondent Labor Commissioner, is the state agency empowered to enforce California's labor laws, including IWC wage orders. (Lab. Code, §§ 21, 61, 95, 98-98.7, 1193.5.)

The wage order at issue here is No. 4-89 (Cal. Code Regs., tit. 8, § 11040),[2] which provides in subdivision 3(A): "[E]mployees shall not be employed more than eight (8) hours in any workday or more than forty (40) hours in any workweek unless the employee receives one and one-half (1 1/2) times such employee's regular rate of pay for all hours worked over forty (40) hours in the workweek. Employment beyond eight (8) hours in any workday . . . is permissible provided the employee is compensated for such overtime at not less than: [¶] (1) One and one-half (1 1/2) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours. . . ."

Subdivision 3(G) of Wage Order No. 4-89 provides an exemption to the terms of subdivision 3(A) where an employee is "covered by a collective bargaining agreement if said agreement provides premium wage rates for overtime work and a cash wage rate for such employee of not less than one dollar ($1.00) per hour more than the minimum wage."

In April 1998, respondent, the state Labor Commissioner, brought an action against Employer, alleging that the formula in the PPR for calculating overtime wages constituted a violation of the state's overtime law, and seeking to recover unpaid overtime wages on behalf of the meter readers, as well as waiting time penalties for those wages as provided for by the Labor Code.

Employer asserted two affirmative defenses: (1) that respondent's complaint was preempted by federal labor laws; and (2) the PPR compensation

[2]Section 11040 has been amended several times since 1995.

program fell under a special exemption to the state's overtime pay laws because it was covered by a collective bargaining agreement.[3]

On February 9, 1999, Employer brought a motion for summary judgment against respondent based on its two affirmative defenses. The following day, respondent filed a motion for summary adjudication against Employer, requesting an order adjudicating that there was no merit to either of the affirmative defenses and that Employer owed a duty to pay its meter readers in compliance with state law.

Respondent asserted that the formula contained within the collective bargaining agreement is at odds with the method respondent was required to use to calculate the hourly equivalent of the "regular rate of pay" referenced in Wage Order No. 4-89. Respondent divides the fixed daily rate by eight, the maximum number of hours that may be worked per day before overtime pay is required pursuant to Wage Order No. 4-89. In other words, if the fixed daily rate is $132.48, then the hourly regular rate would equate to $16.56 ($132.48 divided by 8). Using this hourly regular rate, if a meter reader worked 10 hours in one day and completed only the regularly assigned number of routes, he or she should be compensated for those two additional hours of overtime at the rate of $24.84 ($16.56 × 1.5).

On the other hand, Employer contends that the method of determining the equivalent hourly regular rate contained within the collective bargaining agreement is sanctioned by federal law, to which respondent and the courts should defer. Federal regulations provide that the "regular rate" is determined by dividing total earnings per day by total hours worked that same day. (29 C.F.R. §§ 778.111 and 778.112 (2001); accord, *Bay Ridge Co. v. Aaron* (1948) 334 U.S. 446, 464 [68 S.Ct. 1186, 1196-1197, 92 L.Ed. 1502].) Utilizing the federal method of calculation in the example above, the hourly regular rate would equate to $13.25 ($132.48 divided by 10). The meter reader would be compensated for the two additional hours of overtime at the rate of $19.87 per hour ($13.25 × 1.5). Under Employer's method, therefore, the regular rate is not fixed; an individual's regular rate can vary daily, and the more overtime hours a meter reader works, the lower his or her regular rate and overtime rate become.

---

[3]On appeal, Employer contends that the action is preempted by the Federal Arbitration Act. This contention was not raised in the trial court in connection with its motion for summary judgment. We assume that Employer is referring to an arbitration clause contained in the collective bargaining agreement, as there is no arbitration clause in the PPR document. Since the issue was not first raised in the trial court and the collective bargaining agreement is not part of the record, we do not address this contention. (*Mattco Forge, Inc. v. Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 847 [60 Cal.Rptr. 780]; *Buckhart v. San Francisco Residential Rent etc., Bd.* (1988) 197 Cal.App.3d 1032, 1036 [243 Cal.Rptr. 298].)

On March 9, 1999, the trial court heard both motions. After taking the matter under submission, it denied Employer's motion for summary judgment and granted respondent's motion for summary adjudication. It concluded that federal preemption did not exist; that the agency's determination of its own regulation deserved great weight; and that *Skyline Homes, Inc. v. Department of Industrial Relations* (1985) 165 Cal.App.3d 239 [211 Cal.Rptr. 792] "still governs as to calculating overtime wages."

Employer amended its answer to assert a third affirmative defense, that it had made additional overtime payments which should be credited against any liability. The matter proceeded to trial in October 2000. At trial, Employer withdrew its third affirmative defense, respondent withdrew its second cause of action for waiting time penalties, and the parties stipulated that the amount of overtime wages due, based on respondent's interpretation as adopted by the trial court, was $286,683.87. Judgment was entered accordingly on December 8, 2000. Employer's motion for new trial was denied and it appealed.

DISCUSSION

## I. *Preemption*

██ Pursuant to section 301 of the Labor Management Relations Act (LMRA) (29 U.S.C. § 185(a)) (section 301), federal law exclusively governs suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce. (*Caterpillar Inc. v. Williams* (1987) 482 U.S. 386, 393 [107 S.Ct. 2425, 2430, 96 L.Ed.2d 318].) Section 301 has been construed to cover most state law actions that require interpretation of labor agreements to ensure uniformity. (*Lingle v. Norge Division of Magic Chef, Inc.* (1988) 486 U.S. 399, 403 [108 S.Ct. 1877, 1879-1880, 100 L.Ed.2d 410].) "[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim . . . or dismissed as pre-empted by federal labor-contract law." (*Allis-Chalmers Corp. v. Lueck* (1985) 471 U.S. 202, 220 [105 S.Ct. 1904, 1916, 85 L.Ed.2d 206], citation omitted.) Preemption has also been applied when the "heart" of a state law complaint is a clause in the collective bargaining agreement (sometimes referred to as a CBA) (*Caterpillar Inc., supra*, 482 U.S. at p. 394 [107 S.Ct. at pp. 2430-2431]), or if resolution of the state law claim depends on the meaning of or requires the interpretation of a collective bargaining agreement. (*Lingle, supra*, 486 U.S. at pp. 405-410 [108 S.Ct. at pp. 1881-1884].) However, "not every dispute concerning employment, or tangentially involving a provision of a

collective-bargaining agreement, is pre-empted by § 301." (*Allis-Chalmers, supra,* 471 U.S. at p. 211 [105 S.Ct. at p. 1911]; *Caterpillar Inc., supra,* 482 U.S. at p. 396, fn. 10 [107 S.Ct. at p. 2432].)

Preemption should not be lightly inferred. (*Hawaiian Airlines, Inc. v. Norris* (1994) 512 U.S. 246, 252 [114 S.Ct. 2239, 2243-2244, 129 L.Ed.2d 203].) Section 301 should only be applied to "state law purporting to determine 'questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement.'" (*Livadas v. Bradshaw* (1994) 512 U.S. 107, 123 [114 S.Ct. 2068, 2078, 129 L.Ed.2d 93]; *Builders & Contractors v. Intern. of Elec. Workers* (9th Cir. 1997) 109 F.3d 1353, 1357.) When liability is governed by independent state law, the mere need to "look to" the collective bargaining agreement for damages computation is no reason to hold the state law claim defeated by section 301. (*Lingle v. Norge Division of Magic Chef, Inc., supra,* 486 U.S. at p. 413, fn. 12 [108 S.Ct. at p. 1885].) "Purely factual questions" do not require a court to interpret any term of a collective bargaining agreement. (*Lingle, supra,* 486 U.S. at p. 407 [108 S.Ct. at p. 1882].)

"[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." (*Livadas v. Bradshaw, supra,* 512 U.S. at p. 124 [114 S.Ct. at p. 2078], citing *Lingle.*) In *Livadas,* a terminated union employee sought penalties for the period between her discharge and the date she received the wages due her. The issue raised was a question of state law, entirely independent of any understanding embodied in the collective bargaining agreement. There was no indication that there was a dispute over the amount to which the employee would be entitled as damages. (512 U.S. at p. 125 [114 S.Ct. at p. 2079].)

Very recently, the Ninth Circuit Court of Appeals noted: "The demarcation between preempted claims and those that survive § 301's reach is not, however, a line that lends itself to analytical precision. As the Supreme Court acknowledged in *Livadas,* '[T]he Courts of Appeals have not been entirely uniform in their understanding and application of the principles set down in *Lingle* and [*Allis-Chalmers Corp. v. Lueck, supra,* 471 U.S. 202].' [Citation.] And little wonder. 'Substantial dependence' on a CBA is an inexact concept, turning on the specific facts of each case, and the distinction between 'looking to' a CBA and 'interpreting' it is not always clear or amenable to a bright-line test. [Citations.]" (*Cramer v. Consolidated Freightways, Inc.* (9th Cir. 2001) 255 F.3d 683, 691.)

██ Respondent relies on *Skyline Homes, Inc. v. Department of Industrial Relations, supra,* 165 Cal.App.3d 239, to support its argument that California law, not federal law, should apply.

In *Skyline*, salaried salespeople who worked a fluctuating workweek filed a claim with the Department of Industrial Relations, Division of Labor Standards Enforcement (the DLSE), alleging that their employer improperly computed their overtime pay. (*Skyline Homes, Inc. v. Department of Industrial Relations, supra,* 165 Cal.App.3d at p. 244.) The relevant regulation was substantially similar to the one at issue here, providing that any employee who worked longer than eight hours daily or 40 hours weekly would be compensated at one and one-half times the employee's regular rate. The salespeople were guaranteed a fixed minimum weekly salary, but were paid overtime compensation for all work performed over 40 hours in any given workweek. Their employer computed overtime pay in the same manner as the federal standard applied here by Employer: by dividing the employee's weekly salary by the number of hours actually worked in a given week. Under this method, as in the PPR, the more hours the employee worked, the lower the regular rate became. (*Id.* at p. 245.)

In *Skyline*, as here, the employer maintained that its method for deterring overtime pay was valid as sanctioned under federal law. The *Skyline* court considered the conflict between federal and state law and concluded that federal law did not preempt state law because the Fair Labor Standards Act (FLSA; 29 U.S.C. §§ 201-219) specifically states that "No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum workweek lower than the maximum workweek established under this chapter." (29 U.S.C. § 218(a).) Federal regulations also provide that where state or local laws provide greater protection to the employee, they shall be interpreted to override the provisions of the FLSA. (*Skyline Homes, Inc. v. Department of Industrial Relations, supra,* 165 Cal.App.3d at pp. 250-251, citing 29 C.F.R. § 778.5.) The *Skyline* court concluded that since the number of hours required to be worked before the overtime rate is applied is less under state law than under federal law, the State of California provides for a lower maximum workweek, and thus comes within the express savings clause of the FLSA. (*Skyline, supra,* 165 Cal.App.3d at p. 252.)

Employer argues that *Skyline* was expressly disapproved in *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557 [59 Cal.Rptr.2d 186, 927 P.2d 296] and is no longer good law.

In *Tidewater*, employees of companies that transported workers and supplies to offshore oil drilling platforms filed lawsuits against their employer seeking retroactive overtime pay. The employers responded by filing a lawsuit for injunctive relief, which was granted by the superior court. On appeal, the Supreme Court affirmed the granting of the injunction. It held, inter alia, that California could regulate conduct outside its territorial boundaries, and that federal law did not conflict with or otherwise preempt state

regulation of the employee's overtime pay. (*Tidewater Marine Western, Inc. v. Bradshaw, supra,* 14 Cal.4th at p. 566.) The *Tidewater* court, however, also considered whether the DLSE's policy for determining whether IWC wage orders apply to maritime employees constituted a regulation within the meaning of the Administrative Procedure Act (Gov. Code, § 11340 et seq.). It disapproved of *Skyline* only to the extent that it concluded that the DLSE's policy for calculating overtime was not a regulation within the meaning of the act. (*Tidewater, supra,* 14 Cal.4th at p. 573.) Therefore, we disagree with Employer's contention that the *Skyline* case is not applicable here.

*Skyline* has been followed in *Alcala v. Western Ag Enterprises* (1986) 182 Cal.App.3d 546 [227 Cal.Rptr. 453], *Hernandez v. Mendoza* (1988) 199 Cal.App.3d 721 [245 Cal.Rptr. 36], and *Ghory v. Al-Lahham* (1989) 209 Cal.App.3d 1487 [257 Cal.Rptr. 924]. It is clear that *Skyline* remains good law with respect to the proposition that the state may use its own definition of "regular rate" and may set its own standards regarding the adequacy of overtime pay as long as it does not fall below the federal standards. Moreover, *Skyline* is consistent with the principle that establishment of labor standards falls within the traditional police power of the state. (*Fort Halifax Packing Co. v. Coyne* (1987) 482 U.S. 1, 21 [107 S.Ct. 2211, 2222-2223, 96 L.Ed.2d 1]; *Lingle v. Norge Division of Magic Chef, Inc., supra,* 486 U.S. at p. 411 [108 S.Ct. at p. 1884].)

Employer also attempts to distinguish *Skyline*, arguing that the PPR provides for compensation on a "piece-rate" basis, not an hourly basis. We disagree with this characterization. As the trial court noted, Employer's pay rate is truly a hybrid system. Routes are categorized as to "difficulty." The meter readers are assigned a certain number of routes to complete during a given day, based largely on the difficulty assessment. The assignments are made assuming a traditional eight-hour workday. Compensation is based upon completion of that number of routes but is also based on a predetermined number of hours. If, however, a meter reader consistently does not complete that number of routes in eight hours, it may affect his or her performance rating, and may effect a reassignment of routes. Meter readers cannot simply choose how many routes they wish to complete in a day—they are penalized or reassigned if they cannot finish the number prescribed. Nor may they choose to complete more than the specified number—that option must be specifically assigned by Employer. The amount of pay is specifically fixed as a "per hour assigned" amount in the PPR. Employer's computer payroll system is based on an eight-hour day and 40-hour workweek, although Employer goes to elaborate lengths to "fool" the computer system. It is clear that the PPR is not truly a piece-rate system, and thus we cannot avoid following *Skyline* on that basis.

In its briefs, Employer relied extensively on *Firestone v. Southern California Gas Co.* (9th Cir. 2000) 219 F.3d 1063, a case brought against Employer in this case by four meter readers regarding the same 1995 PPR at issue here. The case was not certified as a class action.

During the briefing process, a petition for rehearing was filed, and the Ninth Circuit issued an order deferring action on the petition pending the completion of proceedings in *Cramer v. Consolidated Freightways, Inc., supra,* 255 F.3d 683. An opinion in *Cramer* was filed in June 2001.

After this case had been argued and submitted, on February 12, 2002, the Ninth Circuit Court of Appeals denied a rehearing in *Firestone* and issued an opinion, concluding that there was no change in result necessitated by the *Cramer* opinion. The opinion affirmed that the claim of the meter readers was preempted by the LMRA because "The parties in this case disagree about which rate in the contract is the 'regular' rate and, thus, disagree on whether plaintiffs are receiving a 'premium' for overtime work. Resolving this question, we held, requires interpretation of the agreement. The agreement would be enforced differently depending on which party's interpretation is accepted. [¶] We conclude that *Cramer* does not change this result. Resolution of plaintiffs' claim to overtime pay under state law cannot be decided by mere reference to unambiguous terms of the agreement." (*Firestone v. Southern California Gas Co.* (9th Cir. 2002) 281 F.3d 801, 802.)

This case does not present a disputed disagreement over interpretation of the collective bargaining agreement. The parties do not dispute how Employer calculates the overtime wages. Thus, the issue is not how to resolve a dispute over the interpretation of the PPR, but a legal question of whether the PPR complies with state law.

Turning to the facts of this case, the PPR does not define "regular rate" of pay. The PPR specifies that "qualified" meter readers are paid "$12.38 per hour assigned," except for overtime conditions. Apparently this hourly rate is set pursuant to the collective bargaining agreement and may vary from year to year. "Unassigned overtime premiums" are paid when a meter reader takes longer than eight hours to complete a certain number of routes. This is distinguishable from "assigned overtime" which occurs when a meter reader is asked to complete more than the normally assigned number of routes, regardless of the number of hours worked. It is the unassigned overtime premium with which we are here concerned.

According to the literal language of the PPR, in unassigned overtime, the number of hours actually worked is multiplied by the ratio of assigned hours

over actual hours. The resulting product is multiplied by a complex formula, which yields a number of "overtime hours" that is only a fraction of the number of actual hours worked in excess of eight. The PPR goes on to explain that the Employer's payroll system was not designed to accommodate this method of payment, and thus it is necessary to "fool the payroll system" by posting all compensation on an hourly basis, and then the hourly wage for overtime hours is multiplied by 1.5.

We need not interpret the complex formula set forth in the PPR because the parties do not dispute that, in actuality, Employer computes the overtime compensation as follows: The daily rate is divided by the number of actual hours worked, which results in a figure which represents the "regular rate" of compensation and then one and one-half times the regular rate is paid for hours worked in excess of eight. In other words, the formula in the PPR works out to be the same calculation allowed under federal law.

California law provides clear standards regarding rates of overtime pay which establish rights independent of a collective bargaining agreement. An employer and a union cannot bargain away an employee's rights under state wage statutes. (Lab. Code, § 219; *Allis-Chalmers Corp. v. Lueck, supra,* 417 U.S. at p. 212 [105 S.Ct. at pp. 1911-1912]; *Balcorta v. Twentieth Century-Fox Film Corp.* (9th Cir. 2000) 208 F.3d 1102, 1111.) Nor may a defendant attempt to inject a federal question into an action that asserts what is plainly a state law claim and transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated. (*Caterpillar Inc. v. Williams, supra,* 482 U.S. at p. 399 [107 S.Ct. at p. 2433]; *Cramer v. Consolidated Freightways, Inc., supra,* 255 F.3d at p. 694.) Here, although the overtime compensation scheme is computed according to a complex mathematical formula in the PPR which *equates* with the federal standard, the parties do not dispute *how* overtime is calculated. Thus, even though the factual inquiry will necessarily include reference to the collective bargaining agreement, no preemption occurs. (*Soldinger v. Northwest Airlines, Inc.* (1996) 51 Cal.App.4th 345, 368 [58 Cal.Rptr.2d 747].)

II.  *The Collective Bargaining Exemption*

At this point we turn to a discussion of the exemption which is contained within subdivision 3(G) of Wage Order No. 4-89. It exempts employers from the provisions of subdivision 3(A) where a "collective bargaining agreement . . . provides premium wage rates for overtime work and a cash wage rate for such employee of not less than one dollar ($1.00) per hour more than the minimum wage."

As we have previously noted, Wage Order No. 4-89 was promulgated by statutory authority granted to the IWC and is enforced by the DLSE. We

agree with the trial court that we should defer to respondent's interpretation of its wage order in calculating the amount of "regular pay." (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 12-13 [78 Cal.Rptr.2d 1, 960 P.2d 1031].)

Respondent's interpretation of this exemption is succinctly stated in its brief on appeal: "The exemption establishes a less exacting standard of overtime compliance for employers covered by a [collective bargaining agreement]: in particular, it eliminates the specific premium wage rates set out in subdivision 3(A) and authorizes the parties to negotiate whatever premium wage rates above the regular rate of pay they may deem appropriate for the broad range of hours constituting overtime work."

As we read this exemption in connection with subdivision 3(A) of Wage Order No. 4-89, the parties to a collective bargaining agreement which provides for payment of a "cash wage rate" of at least $1 more than the minimum wage are free to negotiate the manner of calculating overtime pay without considering the terms of subdivision 3(A) as long as a "premium" is paid. According to the State DLSE Manual, the exemption applies if the collective bargaining agreement requires the employer to pay "any" premium for overtime work, and thus a premium would be "any" amount over the regular pay. (DLSE Enforcement Policies and Interpretations Manual § 10.85; accord, *Bay Ridge Co. v. Aaron, supra*, 334 U.S. at p. 465 [68 S.Ct. at p. 1197].) Respondent figures the "regular pay" by dividing the flat daily rate by eight. Using the figures from above, this results in a regular hourly rate of $16.56. Thus, anything paid above this amount qualifies as a "premium."

Turning to the PPR, and assuming that the meter reader worked a total of 10 hours, we divide $132.48 by 10 resulting in $13.25 per hour. Multiplying $13.25 per hour by 1.5 equals an overtime rate of $19.88. This is more than $16.56, so it qualifies as a premium and the exemption applies. But, as previously noted, a problem may be encountered as additional overtime hours are worked. For example, if 12 hours are worked, the rate of pay would not qualify: $132.48 divided by 12 equals $11.04 which, multiplied by 1.5, equals $16.56.

Employer concedes that the results of a study done over one three-month period found one occasion where a meter reader took more than 12 hours to complete the routes. In only 2 percent of the cases did the routes take more than 11 hours. Thus, it appears that under the most typical scenario, the PPR does provide for a "premium" above the "regular pay" and the exemption would apply. But, because there was at least one time it would not have applied, the court did not err in denying Employer's summary judgment motion. The matter must be remanded to the trial court for a determination of how many occasions application of the PPR resulted in a failure to qualify for the exemption and for calculation of damages, if any.

## DISPOSITION

The judgment is reversed. The matter is remanded to the superior court with directions to vacate its orders granting summary judgment and denying summary adjudication and to enter new and different orders denying those motions in accordance with the principles set forth in this opinion and setting the matter for trial to adjudicate whether application of the PPR has resulted in failure of Employer to pay a premium over the regular pay of $16.56. Costs on appeal are awarded to appellant.

Epstein, Acting P. J., and Curry, J., concurred.

A petition for a rehearing was denied April 4, 2002, and respondent's petition for review by the Supreme Court was denied June 12, 2002.