Filed 6/25/26

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ANDREAS JUNG et al., | B340726 |
|     Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 24STCV11609) |
|     v. | |
| ADAM ACOSTA et al., | |
|     Defendants and Respondents. | |

    APPEAL from an order of the Superior Court of Los Angeles County, Gail Killefer, Judge. Affirmed.

    Robert Lucas Law and Robert W. Lucas; Phillips & Rickards and Wendell Phillips for Plaintiffs and Appellants.

    Hadsell Stormer Renick & Dai, Dan Stormer, David Clay Washington, and Kate McFarlane for Defendant and Respondent Adam Acosta.

---

[*]     Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part III.A.

Gilbert & Sackman, Joshua Adams and Emily Olivencia-Audet for Defendants and Respondents Jeffrey C. Bigelow, Manuel Corral, Diana Corral, and Henry Gambill.

_____

## I.  INTRODUCTION

Following a union judicial panel proceeding, plaintiffs[1] were found guilty of violating the union's prohibitions against anti-LGBTQ bigotry, racism, and sexist behavior and removed from their positions as an officer and an employee.  Plaintiffs then sued defendants[2] asserting various causes of action based on defendants' alleged disclosure of text messages and a confidential mediation brief that defendants used to draft the charges in the judicial panel proceeding.  Defendants responded with a special motion to strike pursuant to the anti-SLAPP statute (Code Civ. Proc., § 425.16),[3] and the trial court granted the motion, in part.

On appeal, plaintiffs contend the stricken claims did not arise from protected activity and, alternatively, those claims had the "'requisite minimal merit'" to defeat the anti-SLAPP motion. (*Baral*, *supra*, 1 Cal.5th at p. 385.)  We conclude the alleged

---

[1]     Plaintiffs are Andreas Jung and Maribel Alvarenga.

[2]     Defendants are Adam Acosta, Jeffrey C. Bigelow, Manuel Corral (M. Corral), Diana Corral (D. Corral), and Henry Gambill.

[3]     Further statutory references are to the Code of Civil Procedure unless otherwise indicated.  "'SLAPP' is an acronym for 'strategic lawsuit against public participation.'" (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 381, fn. 1 (*Baral*).)

2

judicial panel proceedings were "official proceeding[s] authorized by law" within the meaning of section 425.16, subdivision (e)(2) and plaintiffs did not demonstrate their challenged claims had the requisite minimal merit. Accordingly, we affirm the trial court's order.

## II.    BACKGROUND

A.    *The Parties*

As alleged in the complaint, plaintiff Jung was the former president of Council 36 of the American Federation of State, County and Municipal Employees, AFL-CIO (Council 36). Plaintiff Alvarenga was the former executive assistant to Jung. Alvarenga was not a member of Council 36; she was a member of the Council 36 Staff Union (Staff Union).

Council 36 represented over 20,000 members in southern California and was one of over 3,000 labor unions affiliated with the American Federation of State, County and Municipal Employees International Union (International Union), which had over one million members. The Council 36 constitution incorporated by reference the constitution of the International Union.

Defendant Acosta was a former employee of Council 36 and defendants Bigelow, Gambill, D. Corral, and M. Corral (the Bigelow defendants) were all affiliated with Council 36 as an officer, board member, employee, or affiliated union officer.

B.    *Acosta's Complaint, Mediation, and Settlement*

On August 8, 2019, Acosta filed a complaint against, among others, Jung and Council 36 (Acosta's action).  The parties agreed to mediate Acosta's action.

On May 17, 2021, Acosta's counsel submitted to the mediator a mediation brief entitled "Non-Confidential Mediation Brief" (capitalization, underscoring, and boldface omitted).  Attached as an exhibit to the mediation brief were text messages between Jung and Alvarenga that were allegedly racist, anti-LGBTQ, and sexist.

On May 23, 2021, Acosta and Jung signed a mediation confidentiality agreement (mediation agreement).

On July 14, 2021, the parties to Acosta's action signed a confidential settlement and release agreement (settlement agreement).  Alvarenga was not a party to Acosta's action and did not sign the mediation agreement or the settlement agreement.

C.    *Judicial Panel Proceedings*

After the parties in Acosta's action entered into the settlement agreement, Acosta provided Bigelow with the mediation brief and attached exhibits.  Bigelow then provided the documents to the other Bigelow defendants who used them to prepare charges against plaintiffs, which accused them of violating the International Union's prohibitions against anti-LGBTQ bigotry, racism, and sexist behavior.

From January to May 2022, the International Union's judicial panel conducted a hearing on the charges at which the Bigelow defendants testified.

On May 5, 2022, the judicial panel chairperson issued her decision finding plaintiffs guilty of the charges. The decision ordered that Jung be removed as president of Council 36 and expelled as a member of the International Union. It also ordered that Alvarenga be terminated from her position. Council 36 terminated Alvarenga's employment that same day.

Plaintiffs appealed the decision to the full judicial panel, which unanimously affirmed it.

Plaintiffs then appealed the judicial panel decision to the International Union convention in Philadelphia, Pennsylvania. On July 13, 2022, the decision was debated before 2,327 delegates representing approximately 1,000 local unions of the International Union and 800,000 local union members. The convention voted to deny the appeal.

D.   *Plaintiffs' Complaint*

On September 14, 2023, plaintiffs filed their complaint against defendants, alleging 10 causes of action. As relevant here, the complaint included: (1) Alvarenga's breach of contract claim against Acosta, the third cause of action; (2) plaintiffs' conspiracy claim against all defendants, the fourth cause of action; (3) Alvarenga's intentional interference with contractual relations claim against all defendants, the sixth cause of action; and (4) Alvarenga's intentional interference with prospective economic advantage claim against all defendants, the seventh cause of action.[4]

---

[4]   Plaintiffs voluntarily dismissed the eighth, ninth, and tenth causes of action. The first cause of action for breach of

In her breach of contract cause of action, Alvarenga alleged that she was a third-party beneficiary of the mediation and settlement agreements and that Acosta breached those agreements by providing the mediation brief and exhibits to Bigelow. She also alleged that Acosta knew that Bigelow would distribute the documents to the other Bigelow defendants, who would then use the documents to draft and prosecute charges against Alvarenga.

In the conspiracy cause of action, plaintiffs alleged that Acosta's disclosure of his mediation brief and exhibits to the other defendants, and the Bigelow defendants' use of the text messages to draft, file, and prosecute charges against plaintiffs, constituted a conspiracy to breach a contract.

In the interference with contractual relations cause of action, Alvarenga alleged that defendants induced Council 36 and the Staff Union, of which she was a member, to breach their contractual relationship with her. Specifically, she alleged that her contractual relationship with Council 36 and the Staff Union was governed by the terms of a collective bargaining agreement and that defendants induced a breach of that agreement by drafting and prosecuting the charges against her.

In the intentional interference with prospective economic advantage cause of action, Alvarenga alleged that defendants interfered with her contractual relationship with Council 36 by

contract and the second cause of action for breach of the implied covenant of good faith and fair dealing were asserted by Jung against Acosta only. The fifth cause of action for intentional interference with contract was asserted by Jung against the Bigelow defendants. The trial court denied the anti-SLAPP motions as to the first, second, and fifth causes of action and defendants did not appeal from those rulings.

forcing her to defend her employment before the judicial panel and then causing the International Union to order Council 36 to terminate her employment, in contravention of her rights under the collective bargaining agreement.

### E.    *Anti-SLAPP Motions*

#### 1.    The Bigelow Defendants' Motion

On June 13, 2024, the Bigelow defendants filed their anti-SLAPP motion, seeking to strike the causes of action pending against them.  They asserted that plaintiffs' claims arose from defendants' protected activity, namely, their participation in the judicial panel proceedings and subsequent appeals, which were "official proceedings" within the meaning of section 425.16, subdivision (e)(2) in that they were authorized by the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA; 29 U.S.C. § 401 et seq.).[5]  The Bigelow defendants further argued that plaintiffs could not demonstrate the challenged causes of action had the requisite minimal merit.

Plaintiffs opposed the motion, and the Bigelow defendants replied.

---

[5]    The Bigelow defendants alternatively argued that the judicial panel proceedings concerned a matter of public interest. (§ 425.16, subd. (e)(3) & (4).)  Because we conclude that the challenged causes of action arose from activity that was protected by section 425.16, subdivision (e)(2), we do not consider the merits of defendants' contention that those claims also concerned a matter of public interest.

### 2. Acosta's Motion

On July 15, 2024, Acosta filed his anti-SLAPP motion. He asserted that all the claims against him arose from protected activity, either as a writing made in connection with an issue under review in an official proceeding (§ 425.16, subd. (e)(2)) or other conduct in furtherance of his right to petition in connection with an issue of public interest (*id.*, subd. (e)(4)). Acosta cited plaintiffs' allegations that Acosta shared the mediation brief and attached exhibits with the Bigelow defendants, who then used those materials to draft and file charges against plaintiffs. Acosta also argued that plaintiffs could not meet their burden to show that the challenged claims had the requisite minimal merit.

Plaintiffs opposed the motion, arguing, among other things, that Acosta's motion was untimely. Acosta filed a reply.

### 3. Ruling

Following argument on both anti-SLAPP motions, the trial court issued its ruling. Regarding the timeliness challenge to Acosta's motion, the court exercised its discretion to consider it pursuant to section 425.16, subdivision (f). As to both motions, the court determined that defendants' alleged wrongful conduct arose out of protected activity and the judicial panel constituted "an official proceeding" within the meaning of section 425.16, subdivision (e)(2).[6]

---

[6] The court also found that the complaint arose from conduct in connection with an issue of public interest within the meaning of section 425.16, subdivision (e)(4).

The trial court next considered whether plaintiffs could establish that their claims had at least minimal merit and determined that (1) Alvarenga could not prevail against Acosta on her breach of contract claim because she could not show she was a third-party beneficiary to either the mediation or settlement agreement; (2) plaintiffs could not prevail on their conspiracy to breach the agreements claim because, among other things, conspiracy was not an independent tort, but instead a legal doctrine used to impose vicarious liability for the tortious conduct of others and "'a breach of contract becomes tortious only when it also violates an independent duty arising from principles of tort law'"; and (3) Alvarenga could not prevail on her intentional interference with contractual relations and intentional interference with prospective economic advantage claims because those claims were preempted by the Labor Management Relations Act of 1947 (LMRA; 29 U.S.C. § 185). The court therefore granted the anti-SLAPP motions as to those four causes of action. Plaintiffs timely appealed.

## III.   DISCUSSION

A.   *Timeliness of Acosta's Motion*

Plaintiffs originally filed the complaint in Riverside County Superior Court, and on March 6, 2024, they obtained an entry of default against Acosta there. On March 28, 2024, Acosta moved to set aside the default and requested leave to file a responsive pleading.

On March 29, 2024, the parties stipulated to transfer venue to Los Angeles County Superior Court, and to extend the time for

9

Acosta to file an anti-SLAPP motion by a period of "fourteen (14) days after a Notice of Receipt of Transfer and Assignment of Judge and New Case Number issued in Los Angeles Superior Court."

On May 8, 2024, the Los Angeles County Superior Court (the trial court) issued a notice of incoming transfer, which provided the name of the assigned judge and the new case number.

On June 13, 2024, Acosta filed a renewed motion to set aside default in the trial court.

On July 12, 2024, the trial court set aside Acosta's default and ordered him to "file a Responsive Pleading FORTHWITH." Three days later, on July 15, 2024, Acosta filed his anti-SLAPP motion.

Plaintiffs assert that Acosta's anti-SLAPP motion was untimely because even though Acosta's request to be relieved from default was still pending, he had agreed to file his anti-SLAPP motion by May 22, 2024, 14 days after the trial court issued the requisite notice of incoming transfer on May 8, 2024. According to plaintiffs, the court's "failure to enforce procedural requirements is an abuse of discretion requiring reversal." We disagree.

Section 425.16, subdivision (f) provides in pertinent part: "The special motion may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper." Under that subdivision, "[a] court 'enjoys considerable discretion' in determining 'whether to allow [a] late filing of an anti-SLAPP motion.' [Citation.] However, the court must exercise this discretion consistent with the purposes of the statute and must be mindful that the 60-day deadline is the

10

general rule.  [Citation.]  '[T]he Legislature's act in allowing an interlocutory appeal of the denial of an anti-SLAPP motion is clearly tied to the fact that the statute contemplates that most such motions will be filed within 60 days of the filing of the complaint.'  [Citation.]  Thus, a 'trial court must be wary about freely granting a party the right to file an anti-SLAPP motion past the 60-day deadline.'  [Citation.]  In determining whether to permit a late motion, the most important consideration is whether the filing advances the anti-SLAPP statute's purpose of examining the merits of covered lawsuits in the early stages of the proceedings.  [Citations.]  Other relevant factors include the length of the delay, the reasons for the late filing, and any undue prejudice to the plaintiff.  [Citation.]" (*San Diegans for Open Government v. Har Construction, Inc.* (2015) 240 Cal.App.4th 611, 624.)

Acosta filed his motion during the early stages of the litigation, as plaintiffs' lawsuit had not progressed beyond the Bigelow defendants' filing of their motion, and the length of the purported delay was not excessive as Acosta filed his motion on July 15, 2024, which was within two months of May 22, 2024, the date by which plaintiffs contend Acosta was required to file his motion.  (Cf. *Hoang v. Tran* (2021) 60 Cal.App.5th 513, 526 [finding no abuse of discretion allowing defendant to file anti-SLAPP motion more than one year after complaint was filed; defendant "gave a plausible excuse for his delay in filing," and plaintiff failed to show "that the late filing of the anti-SLAPP motion prejudiced his ability to defend against the motion"].)

Given his status as a defendant in default, Acosta could not have filed his motion earlier.  (See *Sass v. Cohen* (2020) 10 Cal.5th 861, 882 ["A defendant who defaults is 'out of court' and

11

not entitled to participate in [any proceeding other than moving to set aside the default]"]; *Bailey v. Citibank, N.A.* (2021) 66 Cal.App.5th 335, 347 ["[t]he entry of a defendant's default cuts off the defendant's right to file pleadings and motions (other than a motion to set aside default under § 473), and it also cuts off the defendant's right to notices and the service of pleadings or papers"].)  Thus, the reason for the delay, Acosta's status as a defendant in default, weighs in favor of allowing the late filing.  Further, plaintiffs do not articulate how they were prejudiced by the timing of Acosta's motion, which was filed three days after the trial court vacated the entry of default.

Finally, the trial court's decision to permit the late filing advances the purpose of the anti-SLAPP statute, which is to early examine the merits of covered claims.  "[T]he whole purpose of the statute is to provide a mechanism for the *early* termination of claims that are improperly aimed at the exercise of free speech or the right of petition.  [Citation.]"  (*Lam v. Ngo* (2001) 91 Cal.App.4th 832, 841.)  On this record, even assuming that Acosta's motion was filed late, we find no abuse of discretion in the court's decision to reach the merits of that motion.

B.    *Anti-SLAPP Motion*

"Resolution of an anti-SLAPP motion involves two steps.  First, the defendant must establish that the challenged claim arises from activity protected by section 425.16.  [Citation.]  If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success.  We have described this second step as a 'summary-judgment-like procedure.'  [Citation.]  The court does

12

not weigh evidence or resolve conflicting factual claims.  Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment.  It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law.  [Citation.]  '[C]laims with the requisite minimal merit may proceed.'  [Citation.]"  (*Baral, supra*, 1 Cal.5th at pp. 384–385, fn. omitted.)  "Our review of the trial court's ruling on an anti-SLAPP motion, including any issues of statutory interpretation presented on appeal, is de novo.  [Citations.]"  (*Doe v. Ledor* (2023) 97 Cal.App.5th 731, 741.)

C.      *Prong One:  Protected Activity*

"At this first step, courts are to 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.'  [Citation.]  The defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity.  [Citation.]"  (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*).)  Among other defined categories, section 425.16, subdivision (e)(2) protects "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other *official proceeding authorized by law*."  (Italics added.)

## 1. Judicial Panel Proceeding

The Legislature did not limit the category of "'official proceeding authorized by law'" in subdivision (e)(2) to proceedings before governmental agencies. (*Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192, 202–203, fn. omitted (*Kibler*).) In the context of nongovernmental entities, California courts have extended "official proceeding" protection to quasi-judicial proceedings if they are part of a comprehensive statutory licensing scheme and "subject to judicial review by administrative mandate" such as is the case with hospital peer review (*id.* at p. 200), and to proceedings "established by statute to address a particular type of dispute" such as occurs during an attorney fee arbitration mandated by law (*Philipson & Simon v. Gulsvig* (2007) 154 Cal.App.4th 347, 358 (*Philipson & Simon*); see Bus. & Prof. Code, § 6200 et seq. [Mandatory Fee Arbitration Act].)

As a threshold issue, plaintiffs contend the anti-SLAPP statute does not apply to protect defendants' offending conduct in this case because the International Union judicial panel proceeding does not constitute an "official proceeding authorized by law" within the meaning of section 425.16, subdivision (e)(2). In considering this issue, we are guided by the Supreme Court's analysis in *Kibler*, *supra*, 39 Cal.4th 192 in which the court considered whether a hospital peer review proceeding—during which a hospital's medical staff evaluates fellow physicians' professional competence—was an "official proceeding authorized by law." The court was persuaded they were "official proceedings" in part because the Business and Professions Code *mandated* the peer review process when it granted to individual

14

hospitals the responsibility to oversee the medical profession. (*Kibler*, *supra*, 39 Cal.4th at pp. 199–200.)  The court commented that the "peer review procedure plays a significant role in protecting the public against incompetent, impaired, or negligent physicians" and expressed concern that excluding them from anti-SLAPP protection would jeopardize participation in peer review committees.  (*Id*. at pp. 200–201.)  The court also observed that peer review decisions were subject to review by administrative mandamus (Bus. & Prof. Code, § 809.8) and thus akin to quasi-judicial public agency decisions that were likewise reviewable by administrative mandamus.  (*Id*. at p. 200.)

In a more recent case, the Supreme Court added, "[hospital] peer review is also designed to ensure that determinations affecting medical staff privileges are made fairly" and "to guard against arbitrariness and unfairness in decisions about whether a practitioner will be permitted to remain on a hospital staff." (*Bonni*, *supra*, 11 Cal.5th at p. 1013.)  The *Bonni* court listed this due process consideration among the factors it relied upon in *Kibler* to conclude that peer review proceedings were official proceedings within the meaning of section 425.16, subdivision (e)(2).  (*Ibid*.)

Notwithstanding plaintiffs' attempt to distinguish union disciplinary hearings based on their private nature, we conclude the International Union judicial panel proceedings at issue here are sufficiently similar to the peer review proceedings discussed in *Kibler*, *supra*, 39 Cal.4th 192 and *Bonni*, *supra*, 11 Cal.5th 995, and thus are "official proceedings authorized by law" within the meaning of section 425.16, subdivision (e)(2).

The judicial panel proceedings were mandated by federal law, specifically, the LMRDA, which provides that no member of

15

a labor organization[7] "may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues ... unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; [and] (C) afforded a full and fair hearing." (29 U.S.C. § 411(a)(5).) Thus, like hospital peer review proceedings—which the Business and Professions Code requires as part of a hospital's bylaws (Bus. & Prof. Code, § 2282, subd. (c)) and must include "standards" for peer review and selecting and removing medical staff officers (*id.*, § 2282.5)—labor unions must comply with certain procedures before fining, suspending, expelling, or otherwise disciplining one of their members. (Cf. *Philipson & Simon*, *supra*, 154 Cal.App.4th at p. 358 [finding "official proceeding" where Mandatory Fee Arbitration Act mandates establishment of a procedure for mediating attorney fee disputes]; *Dorit v. Noe* (2020) 49 Cal.App.5th 458, 469 [same]; *Mallard v. Progressive Choice Ins. Co.* (2010) 188 Cal.App.4th 531, 542 [finding "official proceeding" under Ins. Code, § 11580.2's statutory scheme mandating contractual arbitration of uninsured motorist claim disputes].)

Although, as plaintiffs observe, labor unions adopt the required disciplinary procedures by "private contract," rather than by "statute," that distinction does not alter our conclusion that a judicial panel proceeding is an "official proceeding authorized by law." Those privately adopted procedures are subject to the federal statutory requirement that union policies comply with the due process rights guaranteed by the LMRDA, a federal requirement closely analogous to the Business and

---

[7]     The parties do not dispute that the International Union was subject to the LMRDA.

16

Professions Code's mandate that private hospitals must adopt bylaws that include peer review procedures for staff.

We also reject plaintiffs' assertion that the LMRDA does not "'authorize' union disciplinary proceedings—it merely regulates them if a union conducts them." Plaintiffs suggest that, because a union may elect never to fine, suspend, expel, or otherwise discipline any of its members, the LMRDA due process guarantees for union members are not "authorized by law" as that phrase is used in section 425.16, subdivision (e)(2). We disagree.

Although, in theory at least, a labor union could avoid the LMRDA's procedures by declining to discipline any of its members, that speculative scenario does not render the procedures set forth in the LMRDA discretionary.[8] Here, the union chose to discipline defendants following proceedings instituted pursuant to its constitution. And, as explained, those disciplinary proceedings were subject to the due process mandates of the LMRDA.

---

[8] Plaintiffs also contend that the International Union judicial panel was not an "official proceeding authorized by law" because Alvarenga was subject to its ruling even though she was not an International Union member. This argument is inapposite, as Alvarenga's status as a member or employee does not alter the nature of the panel. As an employee of Council 36, a subordinate body of the International Union, Alvarenga fell within the scope of an accused person as set forth in Article X of the International Union constitution, which provides that charges may be filed "against any individual for actions taken while a member of the [union] or while a staff employee of the [union] or a subordinate body," and the associated due process rights guaranteed therein.

17

Plaintiffs' argument that they were not proceedings "authorized by law" is thus contrary to the plain meaning of "authorized" in section 425.16, subdivision (e)(2): "endowed with authority" or "sanctioned by authority: having or done with legal or official approval." (Merriam-Webster's Online Dict. (2026) <https://www.merriam-webster.com/dictionary/authorize> [as of June 23, 2026], archived at <https://perma.cc/4MUX-K7DH>.) The plain meaning of "authorized by law" controls if there is no ambiguity in that language. (*Washington v. County of San Diego* (2025) 113 Cal.App.5th 874, 879.) Under our reading of that phrase, the LMRDA, through its guarantees of due process for union members before the imposition of discipline, endows unions with the authority to conduct, or otherwise sanctions their conduct of, disciplinary proceedings against members pursuant to a union's constitutional procedures, as long as those procedures are compliant with those federal guarantees.

The procedural requirements of the LMRDA, like hospital peer review procedures, are "designed to ensure that determinations affecting [union discipline] are made fairly. Without fair procedures, [union discipline] can be an instrument for arbitrarily or discriminatorily excluding [union members]." (*Bonni*, *supra*, 11 Cal.5th at p. 1013; see 29 U.S.C. § 411(a)(5) [union member entitled to written notice of charges and reasonable opportunity to defend against them at hearing].) And, just as peer review decisions are subject to review by administrative mandamus (or writ proceeding), union judicial panel proceedings are subject to review by a court. (See 29 U.S.C. § 412 [providing for civil action against labor organization for violation of rights under the LMRDA].)

18

In sum, much like hospital peer review, the judicial panel proceedings here are regulated by a statutory scheme to ensure due process, and subject to judicial review. For these reasons, and in light of the statutory mandate that section 425.16 "shall be construed broadly" (§ 425.16, subd. (a)), we conclude that a judicial panel proceeding is an official proceeding authorized by law.

2.      Claims Against Acosta and Bigelow

Plaintiffs next contend that, even if the judicial panel proceeding was an official proceeding for purposes of the anti-SLAPP statute, plaintiffs' claims against Acosta and Bigelow were predicated on conduct that preceded the initiation of the proceedings before the judicial panel—namely, Acosta's act of providing the mediation brief and exhibits to Bigelow—and were therefore not based on conduct in connection with those subsequent proceedings.

Plaintiffs' contention ignores that their causes of action are premised on Acosta and Bigelow's knowledge and desire to aid in the bringing of charges against plaintiffs. In her breach of contract cause of action, for example, Alvarenga alleged that Acosta "knew of Bigelow's intended use of Acosta's mediation brief and exhibits" before he provided the documents to Bigelow and that the intended use included "draft[ing] the charges against [plaintiffs] in prosecuting the charges" against them. She also alleged that Acosta "further breached" the settlement agreement by encouraging, causing, and supporting others to file the judicial panel charges against plaintiffs.

Similarly, in the conspiracy cause of action, plaintiffs alleged that defendants conspired to breach the mediation and

19

settlement agreements when Acosta provided the Bigelow defendants with the mediation brief and exhibits so that they could draft charges against plaintiffs.[9]  And, in her intentional interference with contractual relations and intentional interference with economic advantage causes of actions, Alvarenga alleged that Acosta "aided in abetting [*sic*] in bringing charges against Alvarenga" "[b]y undertaking the acts alleged" and "[b]y engaging in the acts stated … ."  We therefore reject the argument that Acosta's provision and Bigelow's acceptance of the mediation brief and exhibits were not in connection with the judicial panel proceedings.

Moreover, and as a separate basis for the application of section 425.16, subdivision (e)(2), communications in anticipation of litigation are protected under the anti-SLAPP statute.  (*Bassi v. Bassi* (2024) 101 Cal.App.5th 1080, 1096.)  "As interpreted by the Courts of Appeal, a statement or writing is 'made "in connection with"' litigation under section 425.16(e)(2)—including anticipated litigation—'if it relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation.' [Citation.]" (*Ibid.*)  Here, Acosta's provision to Bigelow of the mediation brief and exhibits related to the substantive issues that the Bigelow defendants raised before the judicial panel and supported the charges adjudicated in those proceedings, which we have already deemed to be official

_____

[9]     Although plaintiffs' complaint earlier alleged that Acosta provided the mediation brief and exhibits to Bigelow, who then provided the documents to the other Bigelow defendants, in the conspiracy cause of action, plaintiffs alleged that Acosta "wrongfully breached his contract with [p]laintiffs by ... providing [the Bigelow defendants] copies of his mediation brief and exhibits… ."

proceedings authorized by law.  Accordingly, Acosta's alleged breach of the confidential agreements was "in connection with" an official proceeding authorized by law.

Plaintiffs additionally contend that Bigelow's alleged "wrongful conduct" is not protected activity under the anti-SLAPP statute.  Citing *Flatley v. Mauro* (2006) 39 Cal.4th 299 (*Flatley*), they argue that Bigelow engaged in illegal activity when he "wrongfully obtained" the mediation brief and therefore his subsequent conduct, the drafting of the charges, was not protected.  We are unpersuaded.

Our Supreme Court "made it clear in *Flatley* that conduct must be illegal *as a matter of law* to defeat a defendant's showing of protected activity.  The defendant must concede the point, or the evidence conclusively demonstrate it, for a claim of illegality to defeat an anti-SLAPP motion at the first step.  [Citation.]" (*City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 424.) Plaintiffs did not conclusively demonstrate that Bigelow engaged in illegal conduct as a matter of law and Bigelow did not concede that he had engaged in such illegal conduct.  Thus, Bigelow's drafting of a "writing in connection with ... '[an] official proceeding authorized by law,'" the judicial panel charges, was protected activity.

Accordingly, we conclude that defendants met their initial burden of demonstrating that the causes of action at issue here arose from their protected activity.


D.    *Prong Two:  Probability of Success*

"To succeed in opposing a special motion to strike, the nonmoving party must 'demonstrate both that the claim is legally

21

sufficient and that there is sufficient evidence to establish a prima facie case with respect to the claim.' [Citation.] '[C]laims with the requisite minimal merit may proceed.' [Citation.] The moving party prevails by 'defeat[ing]' the 'claim as a matter of law' [citation] in 'a summary-judgment-like procedure' [citation]." (*Olson v. Doe* (2022) 12 Cal.5th 669, 679.)[10]

### 1. Alvarenga's Breach of Contract Cause of Action

To prevail on a cause of action for breach of contract made for the benefit of a third party, a plaintiff must show "not only (1) whether the third party would in fact benefit from the contract, but also (2) whether a motivating purpose of the contracting parties was to provide a benefit to the third party, and (3) whether permitting a third party to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties." (*Goonewardene v. ADP, LLC* (2019) 6 Cal.5th 817, 830.)

Here, it is undisputed that Alvarenga was neither a party to nor specifically named in the mediation agreement or the

---

[10] We note that the challenged causes of action were premised, in large part, on defendants' disclosure of plaintiffs' text messages. The record reflects that the text messages were produced during discovery and therefore would not be protected from disclosure under either the mediation or settlement agreement. (See *Wimsatt v. Superior Court* (2007) 152 Cal.App.4th 137, 157 ["Although the statutory scheme [of mediation confidentiality] is broadly applied, it does *not* protect items admissible or subject to discovery merely because they were introduced in mediation"].)

settlement agreement. Plaintiffs nonetheless argue that a motivating purpose of the settlement agreement was "to help Alvarenga and other [Council] 36 employees" because the settlement agreement released Council 36's employees from all past, present, and future claims "arising out of or relating to the events at issue [in Acosta's lawsuit]."[11]

But "[t]he fact that a third party is incidentally named in the contract, or that the contract, if carried out according to its terms, would inure to his benefit, is not sufficient to entitle him to enforce it. [Citation.] Reading the agreement as a whole in light of the circumstances under which it was made, the terms of the agreement must clearly manifest an intent to make the obligation inure to the benefit of the third party. [Citations.]" (*Martin v. Bridgeport Community Assn., Inc.* (2009) 173 Cal.App.4th 1024, 1034.) The purpose of the settlement agreement, in light of Acosta's dispute with Council 36 and Jung, was to settle Acosta's claims against those parties. By its terms, the agreement stated, "it is the desire of the Settling Parties to fully and finally settle all claims between them arising out [of] [Acosta's lawsuit] once and for all and to resolve this dispute amicably without the burden of further disputes and litigation …." Although the release contained broad language that included employees of Council 36, Alvarenga does not explain how the parties to the agreement specifically intended to benefit

---

[11] By limiting this contention to the settlement agreement, plaintiffs waive their argument that a motivating purpose of the contracting parties to the mediation agreement was to provide a benefit to Alvarenga. (*Cruz v. Tapestry, Inc.* (2025) 113 Cal.App.5th 943, 954 (*Cruz*) [issues not raised in an appellant's brief are deemed waived or abandoned].)

her, as she was not named in Acosta's action and did not allege facts supporting an inference that Acosta had any potential claim against her.  (See *Vahle v. Barwick* (2001) 93 Cal.App.4th 1323, 1328 ["the burden is on the third party to prove the parties to the release agreement intended to benefit the third party"].)  Accordingly, Alvarenga failed to meet her burden of demonstrating at least minimal merit as to the third cause of action.

### 2.    Conspiracy Cause of Action

Plaintiffs next contend that they met their burden of demonstrating that their conspiracy cause of action against the Bigelow defendants had at least minimal merit.[12]  According to plaintiffs, their evidence supported an inference that those defendants "knowingly participated in breaching the confidentiality agreements by receiving, distributing, and using materials they knew were protected."  We disagree.

"Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 510–511.)  "It must be activated by the commission of an actual tort." (*Id.* at p. 511.)  Plaintiffs alleged that the

---

[12]    The conspiracy cause of action was alleged against Acosta as well.  But plaintiffs do not argue that their claim against Acosta had at least minimal merit.  Any such argument is therefore waived on appeal. (*Cruz, supra*, 113 Cal.App.5th at p. 954.)

24

Bigelow defendants conspired to breach the mediation and settlement agreements. A breach of contract, however, does not ordinarily constitute a tort. (*Rattagan v. Uber Technologies, Inc.* (2024) 17 Cal.5th 1, 25 [stating "the general rule that, outside the area of insurance contracts, tort recovery is not available for a contract breach unless "'an independent duty arising from principles of tort law'" is violated"].) Because plaintiffs may not ground their conspiracy claim in breach of contract, it is legally insufficient and they therefore have failed to demonstrate that their conspiracy claim had minimal merit.

### 3. Alvarenga's Intentional Interference Causes of Action

Plaintiffs contend that Alvarenga met her second-prong burden of demonstrating the requisite minimal merit for the intentional interference with contractual relations and intentional interference with prospective economic advantage causes of action.

"To prevail on a cause of action for intentional interference with contractual relations, a plaintiff must plead and prove (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. [Citation.] To establish the claim, the plaintiff need not prove that a defendant acted with the primary purpose of disrupting the contract, but must show the defendant's knowledge that the interference was certain or substantially certain to occur as a result of his or her action. [Citation.]" (*Reeves v. Hanlon* (2004) 33 Cal.4th 1140, 1148.)

25

"Intentional interference with prospective economic advantage has five elements:  (1) the existence, between the plaintiff and some third party, of an economic relationship that contains the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentionally wrongful acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm proximately caused by the defendant's action." (*Roy Allan Slurry Seal, Inc. v. American Asphalt South, Inc.* (2017) 2 Cal.5th 505, 512.)

Both of Alvarenga's intentional interference claims alleged that defendants' conduct disrupted her contractual and prospective economic relationship with Council 36 in "contravention" of her rights under the "collective bargaining agreement" between Council 36 and the Staff Union.  We agree with defendants that Alvarenga's intentional interference causes of action are preempted by section 301 of the LMRA (29 U.S.C. § 185), which establishes that "federal law exclusively governs suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." (*Lujan v. Southern California Gas Co.* (2002) 96 Cal.App.4th 1200, 1206.)  Based on Alvarenga's allegations, resolution of these two remaining causes of action would require interpretation of the collective bargaining agreement between Council 36 and the Staff Union to determine the nature of the relationship and the extent of the disruption.  (See *ibid.* ["Preemption has … been applied … if resolution of the state law claim depends on the meaning of or requires the interpretation of a collective bargaining agreement"].)

26

Because Alvarenga's intentional interference claims are preempted by the LMRA and thus legally insufficient, plaintiffs have failed to demonstrate they have minimal merit.

## IV.   DISPOSITION

The order granting, in part, defendants' anti-SLAPP motions is affirmed.  Defendants are awarded costs on appeal.

KIM (D.), J.

We concur:

HOFFSTADT, P. J.

BAKER, J.